Bill HOOKS *v.* GAYLORD CONTAINER CORPORATION

CA 98–1176                    992 S.W.2d 844

Court of Appeals of Arkansas
Division II
Opinion delivered June 23, 1999

*Kaplan, Brewer & Maxey, P.A.*, by: *Silas H. Brewer, Jr.*, for appellant.

*Bridges, Young, Matthews & Drake PLC*, by: *Michael J. Dennis*, for appellee.

JUDITH ROGERS, Judge. This is an appeal from the Workers' Compensation Commission's decision finding that appellant failed to prove that he sustained any hearing loss during the course and scope of his employment with appellee. On appeal, appellant argues that there is no substantial evidence to support the Commission's denial of benefits. We disagree and affirm.

We note that this case is a companion case with four other appeals involving the same appellee and the same core issues. This opinion will serve to address those issues in common with all of the companion cases. Consequently, the other four appellate decisions will reference this opinion while setting forth each one's own particular facts.

In this case, the record reveals that appellant was born on June 26, 1943, and is a high school graduate. Appellant began working for the Pine Bluff Paper Mill on December 10, 1962. The paper mill was owned by Dierks Manufacturing Company at

that time. Appellant worked in the millwright's area in the maintenance department with the classification of journeyman three. Appellant was assigned to the millwright department in 1967, and has continued in that same area until the present. Appellant worked in the paper machine area which was one of the noisiest areas in the mill. At one point in time, appellant used cotton balls as hearing protection. The mill was purchased by Weyerhaeuser, and Weyerhaeuser furnished hearing protection devices and administered hearing tests once a year. Appellant was informed by Weyerhaeuser that he had some hearing loss. Documents introduced into the record indicated that appellant had suffered measurable hearing loss, particularly in the higher frequency levels for both ears three years before appellee purchased the mill. Appellee also performed hearing tests when it purchased the mill in December 1985. According to appellant, appellee would usually report a small amount of hearing loss in appellant's ears or that his hearing had not changed from the previous year.

Appellant had never been in the military, but he had hunted squirrel and deer for twenty-five years. Appellant used a .22 rifle and a 30.06 rifle.

On appeal, appellant argues that there is no substantial evidence to support the Commission's decision denying benefits for job-related hearing loss. Appellant specifically challenges the Commission's reliance on Dr. Joseph Sataloff's opinion over other expert witnesses' opinions.

Doctor Sataloff is an otologist who has practiced for forty-five to fifty years, and his credentials are outstanding. He is board-certified in ear, nose, and throat; is a senior professor of otology at Thomas Jefferson University; has published three to four books in the area of occupational hearing loss; has published two books on hearing loss in general; has textbooks that are used in every medical school in the country; has consulted with the Surgeon General of the Navy; was a member of the committee that wrote the OSHA noise regulations in the early 1970s for the Secretary of Labor; was the chairman of the committee of the AMA for hearing impairment; and consults for a variety of companies to measure noise levels.

Dr. Sataloff testified that as we get older, hearing gets damaged and gets damaged in a certain way. He also said that hearing gets damaged by noise in a different way. Dr. Sataloff testified that:

> One of the criteria that the American Academy of occupational medicine addresses is the length of industrial exposure, stating that it will usually reach maximum level in 10-15 years. Many of us in the field have looked at hundreds of thousands, probably millions of audiograms, and have found that after a person works 10 or 15 years, it's generally 12 years, in a noisy environment, the amount of hearing loss he sustains from a loud job reaches a maximum and does not continue to get worse from noise exposure. It gets worse as he gets older and from other causes. But it stays the same after that. The maximum amount of hearing loss that's caused can pretty well be determined after a person is 10 to 12 years on his job. Of course, if he gets another job that's louder, that's different. But if he works in a very noisy job, kind of like a textile mill operator, and has a hearing loss, then that noise he no longer hears because he's hard of hearing and it doesn't do him any further damage.
>
> If employees worked for previous owners of the facility now owned by Gaylord for as much as 20 years prior to January 1986 when Gaylord began operations, and if their jobs with Gaylord are essentially the same as their previous jobs for other owners, the amount of hearing loss they had when they left their previous jobs would be the maximum amount that's produced certainly in 20 years.

Dr. Michael Winston did not agree with Dr. Sataloff's theory. He believed that appellant's hearing loss was aggravated or exacerbated by noise exposure after 1986 when appellee owned the plant.

Appellant worked in the plant since 1962, and appellee did not purchase the plant until December 1985. So, appellant was exposed to high levels of noise for twenty-three years before appellee purchased the plant. According to Dr. Sataloff, appellant had already reached maximum loss in hearing due to noise exposure. He also concluded that there were other causes that could reduce appellant's level of hearing.

Because the Commission chose to place such great weight with Dr. Sataloff, it found that:

> Dr. Winston has not offered any evidence to explain why he disagrees with [Dr. Sataloff's finding]. While critical of the American Occupational Medical Association Noise and Hearing Conservation Committee, Dr. Winston admitted that he has undertaken no statistical analysis of the criteria with regard to the 10 to 15 year rule for maximum hearing loss for occupational induced hearing loss and even admitted that such theory "may be statistically accurate."

> After considering the qualifications of Dr. Sataloff and Dr. Winston, we find that greater weight should be placed upon Dr. Sataloff's testimony with regard to whether a person reaches a point of maximum loss after 15 years of exposure. Dr. Sataloff is a preeminent medical doctor specializing in the field of hearing loss. . . . According to Dr. Sataloff, there is not enough scientific evidence to support the theory of additional hearing loss after 15 years.

The Commission determined based on this evidence that appellant did not sustain a compensable injury while working for appellee.

 ■    When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Oak Grove Lumber Co. v. Highfill*, 62 Ark. App. 42, 968 S.W.2d 637 (1998). In cases where a claim is denied because a claimant failed to show entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires that we affirm if a substantial basis for the denial of relief is displayed by the Commission's opinion. *Bates v. Frost Logging Co.*, 38 Ark. App. 36, 827 S.W.2d 664 (1992). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Service Chevrolet v. Atwood*, 61 Ark. App. 190, 966 S.W.2d 909 (1998). The question is not whether the evidence would have supported findings contrary to those made by the Commission; there may be substantial evidence to support the Commission's decision even though we might have reached a different conclu-

sion if we sat as the trier of fact or heard the case *de novo*. *University of Ark. Med. Sciences v. Hart*, 60 Ark. App. 13, 958 S.W.2d 546 (1997).

■ ■ We recognize that it is the function of the Commission to determine the credibility of the witnesses and the weight to be given their testimony. *Service Chevrolet, supra*. It is the responsibility of the Commission to draw inferences when the testimony is open to more than a single interpretation, whether controverted or uncontroverted; and when it does so, its findings have the force and effect of a jury verdict. *Oak Grove Lumber Co., supra*. Based on our standard of review and the record before us, we cannot say that there is no substantial basis for the Commission's denial of benefits, or the Commission's reliance on Dr. Sataloff's opinion.

Appellant also argues that the Commission overlooked or disregarded evidence that strongly indicates that operations at Gaylord were expanded and noise levels increased which could have caused appellant additional hearing loss. We disagree.

■ The record indicates that the Commission did not disregard any evidence. The Commission found that based on expert testimony there was no evidence that appellant was exposed to any greater degree of noise after appellee purchased the plant. In support of the Commission's finding, the abstract reveals that appellant was exposed to lesser noise levels after appellee purchased the plant. Gaylord provided better ear protection, and Dr. Thomas Rimmer studied both employment situations before appellee purchased the plant and after it was purchased, and he found that noise levels in the 1970s was 97 decibels, whereas, in the 1990s the average range was 95 decibels. Based on the record, we cannot say that the Commission disregarded evidence.

■ It also appears that appellant contends that the alleged increased noise levels while working for appellee aggravated his preexisting hearing loss. Based on our support of the Commission's decision that the noise levels had not increased, but actually decreased, we find no merit in appellant's contention.

Affirmed.

BIRD and MEADS, JJ., agree.