Roger BUFORD  *v.* STANDARD GRAVEL COMPANY

CA 99-491 .                                        5 S.W.3d 478

Court of Appeals of Arkansas
Division II
Opinion delivered December 1, 1999

*Denver L. Thornton*, for appellant.

*Friday, Eldredge & Clark*, by: *Betty J. Demory*, for appellee Standard Gravel Company.

*David L. Pake*, for appellee Second Injury Fund.

SAM BIRD, Judge. Roger Buford appeals a decision of the Workers' Compensation Commission denying his claim for additional benefits for permanent total disability. He argues that the decision of the Commission is not supported by substantial evidence. We agree and reverse and remand for an award of permanent total disability benefits.

Buford, forty years old and a high-school graduate, has an employment history of heavy labor. He was trained as a telephone-cable splicer while in the Air Force. After an honorable discharge, Buford was employed as a truck driver, a "derrick hand" in the oil fields, an electrician, a cable-TV installer, and, most recently, a journeyman welder. In September 1981, Buford was working high on an oil derrick when a chain binder broke, struck Buford in the throat, and his larynx was crushed. As a result, he speaks with rough-sounding hoarseness and cannot speak loudly, but he was never given a permanent-impairment rating for that injury.

In October 1988, Buford was working for appellee Standard Gravel Company as a welder when he sustained a herniated disk and was found to have six lumbar vertebrae, instead of the normal five. On November 10, 1988, Dr. Zachary Mason, a Little Rock neurosurgeon, performed a laminectomy and diskectomy at the L4-5 level on the left. On January 12, 1989, Buford returned to Dr. Mason and requested that he be released to return to work. In a letter to Dr. Gary Bevill, Buford's family physician in El Dorado, Dr. Mason said Buford had a ten-percent permanent-impairment rating. Dr. Mason also said he had cautioned Buford against stressing his back and specifically to avoid lifting objects weighing greater than forty pounds and to avoid repeated bending and stooping. Buford returned to work for appellee.

In 1991, Buford again injured his back at work and returned to Dr. Mason. An MRI showed a very large herniated disk, and a myelogram revealed nerve root compression at the L5-6 level on the left. On August 14, 1991, Dr. Mason performed another lumbar laminectomy to remove the ruptured disk. Following the second injury Dr. Mason again restricted Buford from repetitive bending, stooping, and lifting objects weighing more than forty to fifty pounds, and assigned him a permanent-impairment rating of fifteen percent to the body as a whole. Buford was released to return to work on November 4, 1991.

In February 1993, Buford again returned to Dr. Mason complaining of low back and bilateral leg pain. Dr. Mason stated in a letter to Dr. Bevill dated February 11, 1993, that working as a welder Buford had been unable to strictly follow the restrictions placed upon him and, while lifting heavy pipe, began to have severe back pain to the extent that he was unable to work. Dr. Mason

referred Buford to Dr. Austin Grimes, a Little Rock orthopedist. On May 27, 1993, Dr. Grimes performed another lumbar diskectomy at the L4-5 level and a fusion. Buford has not been able to work since. After extensive physical therapy and rehabilitation efforts, Buford endured a series of epidural steroid injections on July 13, 1995, but continued to have severe pain in his lower back and legs.

On February 27, 1997, Healthworks Outpatient Physical Therapy at JRMC, reported to Dr. Grimes that it had performed a functional capacity evaluation on Buford. The summary stated that Buford had a seventy-five percent validity criteria indicating consistent effort and there was no observed symptom exaggeration or inappropriate illness behavior. It recommended:

> Mr. Buford is *not capable* of working for *an eight hour day*. His functional abilities deteriorated during this evaluation. Due to the length of time since the injury, *and the extent of the injury*, it would appear that Mr. Buford *would not benefit* from any type of rehabilitation program. [Emphasis added.]

At the hearing on Buford's claim for additional benefits, he testified that he lives in a house provided rent free by his in-laws, and he draws social security disability of only $1,300 a month for himself, his wife and a child. He said he cannot sit, stand, sleep, drive, or walk for more than just a few minutes or carry anything over forty pounds. He can do minor maintenance on things like a vacuum cleaner, he sometimes does the dishes, and occasionally makes the beds, but he can do only minor yard work and gardening, although he admitted that he has mowed the yard a few times. He said he had also fished in a bass tournament and gone camping once a year.

Buford also testified that he has friends who live next door and down the street who are disabled like he is, and he walks to visit them. They talk, drink beer, watch television, and listen to music. Buford said he is not on regular pain medication because the insurance company has refused to cover it, and he cannot afford to pay for the prescriptions himself. He said the only thing he has to deaden the pain is beer.

Buford has been evaluated by two rehabilitation companies. One wanted him to become a welder instructor, but they sent him,

a journeyman welder, to school to learn *basic welding*. There is no training in El Dorado that a journeyman welder can take to learn to become an instructor. Furthermore, Buford cannot speak to a class for thirty to forty minutes at a time because of his throat injury, and he can only talk loud enough for a class to hear him "if they were quiet."

The second rehabilitation company forwarded approximately twenty-three job "opportunities" to Buford, and he filled out applications with those employers "honest." Buford explained that if the application had a question about disability on it, he answered truthfully because he is disabled, but if the application did not specifically ask for the information, he did not volunteer it.

The administrative law judge awarded appellant a thirty percent anatomical impairment and a twenty percent wage-loss disability, to be paid by the Second Injury Fund. The Commission affirmed and adopted his opinion. The Second Injury Fund has not appealed its liability. On appellate review, we must view the evidence in the light most favorable to the findings of the Commission and give the testimony its strongest probative force in favor of the action of the Commission. *Boyd v. General Indus.*, 22 Ark. App. 103, 733 S.W.2d 750 (1987); *McCollum v. Rogers*, 238 Ark. 499, 382 S.W.2d 892 (1964). Our standard of review on appeal is whether the decision of the Commission is supported by substantial evidence. *Boyd v. General Indus.*, *supra*; *City of Fayetteville v. Guess*, 10 Ark. App. 313, 663 S.W.2d 946 (1984). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Boyd v. Dana Corp.*, 62 Ark. App. 78, 966 S.W.2d 946 (1998); *Wright v. ABC Air, Inc.*, 44 Ark. App. 5, 864 S.W.2d 871 (1993). We do not reverse a decision of the Commission unless we are convinced that fair-minded persons with the same facts before them could not have arrived at the conclusion reached. *Silvicraft, Inc. v. Lambert*, 10 Ark. App. 28, 661 S.W.2d 403 (1983). Where the Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial-evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Johnson v. General Dynamics*, 46 Ark. App. 188, 878 S.W.2d 411 (1994); *Johnson v. American Pulpwood Co.*, 38 Ark. App. 6, 826 S.W.2d 827 (1992). These rules insulate the Commission from judicial review and properly so, as it is a specialist in this area and

this court is not. *Wade v. Mr. C. Cavenaugh's*, 25 Ark. App. 237, 756 S.W.2d 923 (1988). However, a total insulation would obviously render the appellate court's function in reviewing these cases meaningless. *Boyd v. Dana*, and *Boyd v. General Indus.*, *supra*.

Buford argues on appeal that the Commission erred in holding that he did not come under the odd-lot doctrine, and we agree. For many years, Arkansas case law provided that an employee who was injured to the extent that he could perform services that were so limited in quality, dependability, or quantity that a reasonably stable market for them did not exist was classified as totally disabled, because he fell within the "odd-lot" category of disabled workers. *See Rooney v. Charles*, 262 Ark. 695, 560 S.W.2d 797 (1978); *Ellison v. Therma-Tru*, 66 Ark. App. 286, 989 S.W.2d 987 (1999); *Nelson v. Timberline Int'l, Inc.*, 57 Ark. App. 34, 942 S.W.2d 260 (1997); *Moser v. Arkansas Lime Co.*, 40 Ark. App. 108, 842 S.W.2d 456 (1992), *supp. op.*, 40 Ark. App. 113, 846 S.W.2d 188 (1993). Section 24 of Act 796 of 1993 [now codified as Ark. Code Ann. § 11-9-522(e) (Repl. 1996)] abolished the odd-lot doctrine for permanent disability claims based on injuries that occurred after July 1, 1993; however, the doctrine was applicable to Buford's disability claim stemming from compensable injuries sustained in 1981, 1988, 1991, and 1993.

Under the odd-lot doctrine, where the claim is for permanent disability based on incapacity to earn, the Commission is required to consider *all* competent evidence relating to the disability, including the claimant's age, education, medical evidence, work experience, and other matters reasonably expected to affect his earning power. *Rooney, Ellison, Nelson*, and *Moser*, *supra*, and *Perry v. Mar-Bax Shirt Co.*, 16 Ark. App. 133, 698 S.W.2d 302 (1985). An injured worker who relies upon the odd-lot doctrine has the burden of making a prima facie showing of being in that category based upon the factors of permanent impairment, age, mental capacity, education, and training. If the worker does so, the employer then has the burden of showing that some kind of suitable work is regularly and continuously available to him. *Nelson, supra*.

Buford claims he belongs in the odd-lot category because he has a fiften percent permanent anatomical impairment from the first two back surgeries (Dr. Grimes did not give him an anatomical impairment rating), he is unable to speak above a whisper, he has

had three back injuries and surgeries that left him with constant pain, and unable to work more than four hours a day, while at the same time he is restricted from any continuous bending, stooping, walking, standing, and restricted from lifting over forty pounds. Although he finished high school and says he can read, write, and do simple math, his functional equivalency test scores show he is very poor at math and writing.

The Commission emphasized Buford's reluctance to go back to work; his lack of motivation; his use of beer; his enjoyment of walking to his friends' houses; his ability to deer hunt, fish, and camp; his ability to shop with his wife, garden, and mow the yard. The Second Injury Fund also stresses appellant's lack of motivation to work, his enjoyment of spending his days with his other disabled buddies, drinking beer, watching TV, and listening to music.

■ Although motivation is a factor that may be considered by the Commission in determining permanent disability, *see* Ark. Code Ann. § 11-9-522 (b); *Glass v. Edens*, 233 Ark. 786, 346 S.W.2d 685 (1961); *Sapp v. Phelphs Trucking, Inc.*, 64 Ark. App. 221, 984 S.W.2d 817 (1998), in this case, the Commission based its decision to deny benefits almost entirely on its conclusion that Buford lacked motivation to work. The record simply does not contain facts that support the Commission's conclusion that Buford was "sadly lacking" in motivation.

The evidence is clear that Buford sustained four serious work-related injuries: a crushed larynx, and three consecutive injuries to his lower back that required surgical correction. After each injury except the last one, Buford has gone back to work. Following the loss of his job as a "derrick hand" due to his larynx injury, he sought out a friend who taught him to weld. Following his first back surgery, he asked the doctor to give him a release to return to work; and he returned to his welding job following his second back surgery. These examples of Buford's conduct do not demonstrate a lack of motivation to work.

The functional capacity evaluation revealed that Buford can work only four hours a day, and then with many physical restrictions. The report stated that Buford "put forth good effort which passed validity criteria," that "there were no indications of symptom magnification," that "a conditioning program could, at best,

help client achieve a light duty rating, but not a full-time work status," and that he "would not benefit from any type of rehabilitation program." These reports, along with the medical reports introduced at the hearing, indicate that Buford's reluctance to work was due to pain and discomfort resulting from his physical condition, not from any lack of motivation on his part.

The Commission seemed to take offense at Buford's testimony that he filled out the employment-application forms truthfully, and that he considers himself disabled. Had he been untruthful or falsely misrepresented his physical condition in obtaining employment, and, thereafter, sustained another work-related injury, the employer could have claimed that it was protected from liability by the *Shipper's Transport* defense. *See Shipper's Transport of Georgia v. Stepp*, 265 Ark. 365, 578 S.W.2d 232 (1979).

When Buford's age, education, work experience, and medical restrictions are considered together, Buford made a clear and convincing prima facie case that he was totally and permanently disabled by his throat injury and his three back injuries. The burden then shifted to the employer to show that work is readily and consistently available within appellant's restrictions in his hometown of El Dorado, Arkansas. The employer failed to meet that burden. Gaye Signoff, a vocational counselor, testified that she had located thirteen jobs in the El Dorado community that she felt were within Buford's abilities, and Buford testified that he filled out applications at all of them. However, because he replied truthfully when asked about his physical condition, or for some other reason, he received no offer of an interview, much less a job, from any of those employers. Buford said when he went to seek a job, most people wondered why he was there, and that at one place where Signoff had told him a stool would be available, he was told that he would not be allowed to sit down at all.

The Commission should have awarded Buford permanent and total disability benefits. We reverse and remand for it to enter the order.

Reversed and remanded.

GRIFFEN and CRABTREE, JJ., agree.