Delton RICE *v.* GEORGIA-PACIFIC CORPORATION

CA 00-97 35 S.W.3d 328

Court of Appeals of Arkansas
Division IV, I, and II
Opinion delivered December 13, 2000

*Denver L. Thornton*, for appellant.

*Mark Alan Peoples, PLC*, for appellee Georgia-Pacific Corporation.

*David L. Pake*, for appellee Second Injury Fund.

ANDREE LAYTON ROAF, Judge. Delton Rice appeals from a Workers' Compensation Commission decision finding that he failed to make a *prima facie* case that he was permanently and totally disabled pursuant to the odd-lot doctrine, and denying liability as to the Second Injury Fund. Rice argues on appeal that he is entitled to permanent disability under the odd-lot doctrine and that the Commission's denials of permanent disability and of liability as to the Second Injury Fund are not supported by substantial evidence. We affirm.

Delton Rice was employed by Georgia-Pacific Corporation (GP) from approximately 1970 to September 1995. Rice suffered an admittedly compensable back injury on May 22, 1992. Rice had several work and non-work related injuries prior to the 1992 injury, in 1975, 1980, 1981, 1988 and 1991. No permanent anatomical rating was assessed for any of these earlier injuries. Rice testified before the Administrative Law Judge (ALJ) that prior to his 1992 injury, he was able to lift, crawl, stand or climb with no restrictions, and was also able to roof houses for supplemental income.

An MRI performed after the 1992 injury reflected a herniated nucleus pulposus at L5-S1. On July 16, 1992, Dr. Stephen Cathey performed a laminectomy and diskectomy. Rice had further surgery on January 20, 1993, to exercise fragments of disc material. Rice continued to have pain but an additional MRI showed no further disc herniation.

In a report dated April 15, 1993, Dr. Cathey stated that Rice had reached maximum medical improvement and returned him to work with a twenty-five pound weight-lifting restriction. Dr. Cathey assessed a fifteen percent (15%) permanent partial impairment rating to the whole person due to residual effects of the disc herniation and nerve-root damage. In assessing the fifteen percent (15%) impairment, Dr. Cathey did not use any of Rice's preexisting degenerative disc disease to render the opinion, though he testified

that he thought there were objective factors to assess a five percent (5%) rating prior to the 1992 injury. Functional capacity and work-hardening assessments indicated that Rice was capable of performing light work. A functional capacity assessment in 1995 recommended Rice for "medium" level work due to his relatively good level of strength.

Rice attempted five times to return to work at GP, performing such jobs as sweeping the floors, emptying the garbage, cleaning up paper and dragging paper weighing as much as five or six hundred pounds. On September 1, 1995, Rice claimed to have suffered severe back pain while dragging paper and did not return to work or seek employment elsewhere after that date. In a letter dated March 11, 1997, Dr. Cathey noted a significant progression of Rice's degenerative disc disease, osteoarthritis, and spondylois, and stated that Rice was "...permanently and totally disabled with regard to his future employment." However, in a July 1, 1998 deposition, Dr. Cathey stated that no objective factors had changed between September 1995 and March 1997, and that Rice's anatomical impairment never changed with regard to the AMA Guidelines but that he understood that factors other than Rice's work-related injury could contribute to his disability status, such as "level of education, other social or economic factors and other variables." On April 16, 1998, Dr. Cathey again maintained that Rice was "totally and permanently disabled."

At the time of the hearing before the ALJ, Rice was forty-eight years of age and had not finished high school. Rice stated that he experiences back and leg pain every day, that walking is a problem, especially on concrete, and that he cannot stand or sit for long periods. He testified he has trouble riding in a car. If he overdoes it one day, he is "laid up" in the house for a day or two. On a typical day, he might put a load of clothes in the washing machine. He might rinse a few dishes if he feels like it or vacuum around the kitchen table. He can ride a riding law mower for fifteen minutes but can't use a push mower. He can hunt and fish every now and then. He can ride a four-wheeler. He can lift thirty to forty pounds. He is on pain medication but testified he tries not to take it unless he has to. He draws Social Security with a comp offset. He testified that he has no plans to obtain his GED and has not thought about going back to work or what he would do if he did return to work.

.The ALJ found that the Rice had failed to show that he had been rendered permanently and totally disabled as a result of his 1992 compensable back injury and resulting surgeries; that Rice failed to make a *prima facie* case that he fell within the odd-lot category and failed to establish that he was permanently and totally disabled; that Rice was entitled to an additional fifteen percent (15%) wage-loss disability; that Rice's pre-1992 anatomical impairment; assessed by Dr. Cathey, did not combine with the 1992 compensable back injury to produce Rice's current disability status, and therefore, the Second Injury Fund was not liable for any of the benefits awarded and GP was responsible for the benefits awarded. The Commission affirmed and adopted the ALJ's findings.

On appeal, Rice argues that the Commission's decision that he is not permanently and totally disabled under the odd-lot doctrine is not supported by substantial evidence. In reviewing decisions of the Workers' Compensation Commission, this court views the evidence in the light most favorable to the Commission and affirms the decision if it is supported by substantial evidence. *Hooks v. Gaylord Contained Corp.,* 67 Ark. App. 159, 992 S.W.2d 844 (1999). *Barnett v. Allen Canning Co.,* 49 Ark. App. 61, 896 S.W.2d 444 (1995). Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *Id.* A decision by the Workers' Compensation Commission should not be reversed unless it is clear that fair-minded persons could not have reached the same conclusions if presented with the same facts. *Id.* Where the Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial-evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief.

Disability is defined under Arkansas law as the "incapacity because of compensable injury to earn, in the same or other employment, the wages which the employee was receiving at the time of the injury." Ark. Code Ann. § 11-9-102(5). The wage-loss factor is the extent to which a compensable injury affects a person's ability to earn a livelihood. *Grimes v. North American Foundry,* 42 Ark. App: 137, 856 S.W.2d 309 (1993). Wage-loss disability is to be determined from a consideration of the medical evidence, together with the other elements such as the injured worker's age, education, experience, and other matters affecting wage loss, including the claimant's motivation to return to work. *Mann v. Potlatch Forests,*

*Inc.*, 237 Ark. 8, 371 S.W.2d 9 (1963); *Weyerhaeuser Co. v. McGinnis*, 37 Ark. App. 91, 824 S.W.2d 406 (1992).

■ Rice asserts that he is permanently and totally disabled pursuant to the odd-lot doctrine. The doctrine was abrogated by Act 796 of 1993 but has continued to be applied to injuries that occurred before the Act's July 1, 1993 effective date. *See, e.g., Nelson v. Timberline International, Inc.*, 57 Ark. App. 34, 942 S.W.2d 668 (1997). Under that doctrine, permanent total disability may be found where a worker, not all together incapacitated, is so handicapped that he will not be employed regularly in any well-known branch of the labor market. *Lewis v. Camelot Hotel*, 35 Ark. App. 212, 816 S.W.2d 632 (1991). The injured worker has the burden of making a *prima facie* showing that his case fits within the odd-lot category. Only if the worker makes a *prima facie* showing does the employer bear the burden of showing that some kind of suitable work is regularly and continuously available to him. *See Nelson, supra.*

Rice worked for GP for twenty-five years, and receives both retirement from GP and social security disability. Rice can hunt and fish and do light housework. He can lift thirty pounds. After his 1992 injury he was assigned a fifteen percent (15%) permanent whole-body impairment in 1993. He attempted to return to work at GP five times, but has not worked for GP or any other employer since September 1, 1995. In a September 18, 1995 report, Dr. Cathey stated that appellant's MRI scan looked better than any of his previous studies in terms of ruling out recurrent lumbar disk herniation or nerve-entrapment syndrome. In 1995, his functional-capacity evaluation recommended him for "medium level work due to his relatively good level of strength." However, Rice testified that he has not attempted to find work since 1995. In 1997, Dr. Cathey stated Rice was permanently and totally disabled, however, this opinion was issued when Rice was applying for social security disability benefits. Moreover, Dr. Cathey also stated that there were no additional objective findings upon which to base Rice's change in status since he last assessed a fifteen percent (15%) rating in 1993, and he clearly considered wage-loss factors other than medical or anatomical factors in issuing this opinion.

■ The Commission found that there was the lack of a substantial and credible basis for Dr. Cathey's permanent and total

disability rating and therefore found that it should not be accorded much weight. The Commission also found that Rice's present lack of interest and motivation to return to work impeded a full assessment of Rice's capacity to earn wages. Consequently, considering all relevant factors, there is substantial evidence to support the Commission's decision that Rice failed to make a *prima facie* case that he falls within the odd-lot category and failed to prove by a preponderance of the evidence that he is totally incapacitated from earning wages.

 Rice also argues that the Commission's finding that the second injury fund has no liability is not supported by substantial evidence. For the Second Injury Fund to be liable under workers' compensation law, the employee must have suffered a compensable injury at his present place of employment, prior to that injury the employee must have had a permanent partial disability or impairment, and the disability or impairment must have combined with the recent compensable injury to produce the current disability status. *Second Injury Fund v. Stephens*, 62 Ark. App. 255, 970 S.W.2d 331 (1998). The Fund is obligated to provide compensation for any disability greater than the disability resulting from the earlier injury and the anatomical impairment caused by the second injury. Ark. Code Ann. § 11-9-525 (Repl.1996); *see also Nelson v. Timberline International, Inc.*, 332 Ark. 165, 964 S.W.2d 357 (1998). The stated public purpose of the establishment of the Fund is to encourage employment of handicapped or disabled workers by assigning liabilities for the wage-loss consequences of a second injury to the Fund. *Id.*

 Rice contends that he had a five percent (5%) rating that predated his 1992 injury and that the 1992 injury combined with his chronic, degenerative lumbar disc disease to produce the current disability status. He asserts that he meets these requirements for second injury fund liability. However, Rice contended before the Commission that he did not have a serious back problems before his 1992 injury and he was in "good, healthy shape." Likewise, there is no evidence that Rice was given any anatomical impairment rating for his condition or as a result of his other injuries before the 1992 injury. The Commission found that Rice failed to establish that the Second Injury Fund had any liability; there is substantial evidence to support such a conclusion.

Affirmed.

HART, JENNINGS, KOONCE, CRABTREE, and MEADS, JJ., agree.

BIRD and GRIFFEN, JJ., and ROBBINS, C.J., dissent.

SAM BIRD, Judge, dissenting. Although I agree with the majority's decision that the Second Injury Fund does not have any liability in the case at bar, I respectfully dissent from the majority's decision that appellant Delton Rice failed to present prima facie evidence that he is permanently and totally disabled under the odd-lot doctrine. The majority opinion, along with the Commission, has failed to consider all of the credible evidence and has failed to explain why the opinion of Rice's two treating physicians should be disregarded.

The odd-lot doctrine refers to employees who are able to work only a small amount; the fact that they can work some does not preclude them from being considered totally disabled if their overall job prospects are negligible. *M.M. Cohn v. Haile,* 267 Ark. 734, 589 S.W.2d 600 (Ark. App. 1979). Furthermore, an employee who is injured to the extent that she can perform services that are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist may be classified as totally disabled. *Lewis v. Camelot Hotel,* 35 Ark. App. 212, 816 S.W.2d 632 (1991). Under the odd-lot doctrine, where the claim is for permanent disability based on incapacity to earn, the Commission is required to consider *all* competent evidence relating to the disability, including the claimant's age, education, medical evidence, work experience, and other matters reasonably expected to affect his earning power. *Buford v. Standard Gravel Co.,* 68 Ark. App. 162, 5 S.W.3d 478 (1999).

As the majority noted, Rice worked at Georgia-Pacific for more than twenty-five years. In 1975, he injured his back while lifting rolls of paper. In 1980, he sustained another work-related back injury. In 1981, he sustained a crush-type injury to his chest. In 1988, he suffered low-back pain while lifting a washing machine. In 1990, he was diagnosed with degenerative disc disease. In 1991, he hurt his back while lifting firewood. None of these injuries affected his work capabilities. He testified that prior to his May 1992 injury he was in good, healthy shape, in that he was able to lift, stand, and sit with no restrictions.

However, in May 1992, Rice was unloading a piece of plywood; he picked it up, turned sideways and felt a pinch. An MRI showed that he had a herniated disc. He underwent two surgeries and was assigned an impairment rating of fifteen percent to the body as a whole, had permanent lifting restrictions applied, and was given a rating of five percent for the preexisting degenerative back disease. Rice returned to work, but continued to complain of constant pain. At first, Dr. Cathey released Rice to work, stating that he could perform a medium workload. This was later changed to a light workload.

In finding that Rice did not fall within the odd-lot doctrine, the law judge stated that appellant was able to hunt and fish, perform light housework, and lift thirty to forty pounds. The law judge also noted that Rice has not done any work or made any efforts to be trained to do any other type of work. The Commission affirmed and adopted the law judge's opinion.

In *Buford v. Standard Gravel Co., supra*, the court of appeals reversed a finding by the Commission that the appellant did not fall within the odd-lot doctrine guidelines. Buford had had his larynx crushed and had undergone three back surgeries. He had been restricted from repetitive bending, stooping, and lifting heavy objects. After each injury and each surgery he had returned to work. Then his doctor found that he was permanently and totally disabled. The Commission, in making its decision, emphasized his lack of motivation, his use of beer, his enjoyment of walking to his friend's home, his ability to hunt deer, fish and camp, and his ability to shop with his wife, garden, and mow the yard. Therefore, it denied that he fell under the odd-lot doctrine. This court reversed.

In *Walker Logging v. Paschal*, 36 Ark. App. 247, 821 S.W.2d 786 (1992), the claimant, a man in his late forties, also dropped out of school and never received his GED. He had worked jobs involving heavy manual labor and could neither read nor write. He was injured while working as a timber cutter when a tree fell on him, injuring his right knee. Although his treating physicians never stated that he was permanently and totally disabled, the Commission found that substantial evidence existed to support the finding that the claimant was totally and permanently disabled. We affirmed.

In the instant case, the law judge, Commission, and majority in its opinion have failed to consider all of the evidence presented. Rice testified that he does not have a high-school education; he is forty-seven years old; and, as the law judge correctly noted, he has not received any further training. He performed manual labor for Georgia-Pacific all of his adult working life. He has had several back injuries, undergone two surgeries, continues to complain of constant back pain, and stated that he can sit or stand only for very limited periods of time. He did state that he had hunted deer and gone fishing a few times since his injuries. He testified that he tried returning to work a couple of times. Even though the Commission found that he lacks motivation, he stated that if Georgia-Pacific would offer him a job, he would accept it.

In addition, the law judge, the Commission, and the majority have failed to adequately explain why the testimony of Rice's two physicians, who found that he was permanently and totally disabled, should be disregarded. In November 1994, in a chart note, Dr. Cathey stated, "Considering the fact that the patient had two lumbar disc surgeries and still has significant amount of chronic lower back and right leg pain is difficult for me to see how he will [be] able to return to his previous occupation." On March 11, 1997, Dr. Cathey wrote to Rice summarizing his recent evaluation and stated, "Mr. Rice, in my opinion, your chronic degenerative lumbar disc disease, osteoarthritis, and spondylosis has progressed significantly since your last evaluation in April 1996. Although I realize you have been denied social security benefits in the past, based on today's exam, I believe you to be totally and permanently disabled with regard to future employment." Contrary to the suggestion of the majority, there is nothing in this statement by Dr. Cathey that should cause the inference that Dr. Cathey made his total-and-permanent-disability determination solely for the purpose of supporting Rice's application for Social Security disability benefits. Dr. Cathey reiterated his belief that Rice was permanently and totally disabled on April 16, 1998, when he stated in a clinic note, "Lastly, it is my belief that Mr. Rice *remains* permanently disabled from the effects of his multiple lumbar disc surgeries, the residual nerve damage in his right leg, and his chronic degenerative lumbar disc disease." (Emphasis added.)

Dr. D.L. Toon, Rice's general physician, also stated in a doctor's note, dated May 24, 1995, that Rice was permanently and

totally disabled. Then, in a doctor's note dated June 29, 1995, Dr. Toon again stated that Rice had been a patient of his for many years and that he had determined Rice to be permanently and totally disabled.

Based upon his work experience, his injuries, and the credible opinion of the medical doctors who found him to be permanently and totally disabled, I believe that the Commission erred in finding that Rice had not met his burden in proving that he is permanently and totally disabled, and I would reverse the part of the Commission's opinion finding otherwise.

I am authorized to state that Chief Judge ROBBINS and Judge GRIFFEN join in this dissent.