Deborah ULIBARRI, Widow of Burke B. Ulibarri *v.*
JIM WOOD COMPANY, Inc. and CNA

CA 02-55                                              87 S.W.3d 846

Court of Appeals of Arkansas
Division IV
Opinion delivered October 30, 2002

*Orr, Scholtens, Willhite & Averitt, PLC*, by: *Jay Scholtens* and *M. Scott Willhite*, for appellant.

*Laser Law Firm, P.A.*, by: *Frank B. Newell*, for appellees.

K AREN R. BAKER, Judge. Appellant, Deborah Ulibarri, is the widow of Burke B. Ulibarri. Mr. Ulibarri died of a heart attack while working as a concrete foreman on a construction project for appellee, Jim Wood Company, Inc. Appellee CNA Insurance is the insurance carrier for Jim Wood Company. On appeal, appellant asks us to reverse the decision of the Commission finding that her claim is noncompensable and hold that its decision is not supported by substantial evidence.

When reviewing a decision of the Workers' Compensation Commission, the Court of Appeals views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission. *Rice v. Georgia Pacific Corp.*, 72 Ark.App. 148, 35 S.W.3d 328 (2000). This court must affirm the decision of the Commission if it is supported by substantial evidence. *Id.* Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion of the Commission. *Id.* The issue on appeal is not whether the appellate court might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, the appellate court must affirm its decision. *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999). Applying this standard to the facts in this case, we must affirm.

At the time of his death, Mr. Ulibarri was 47 years old, was 6 feet, 2½ inches tall, weighed about 240 pounds, was a non-

smoker for the past 15 years and was in good health with no known history of heart disease. He had been involved in construction work most of his life and had worked for the Jim Wood Company for at least five years. His superintendent, Mr. Baltz, had nothing but the highest praise for Mr. Ulibarri's work. He also testified that he had never heard Mr. Ulibarri complain about health problems or other matters except the day before his fatal heart attack when he complained of being tired and his back hurting a little. Similarly, Mrs. Ulibarri testified that until this project, her husband never complained of any health problems except an occasional sore back and did not even have a family physician. She had never known him to have chest pains, shortness of breath, or to be overly tired.

In August 1999, the decedent had been working for two weeks at the Pocahontas School before he sustained a heart attack and died. On the morning of August 24, the time of the heart attack, the construction reports indicate the temperature was 86 degrees; however, testimony was presented that the concrete pour where decedent was working was between two buildings with no wind blowing. The death certificate indicates the immediate cause of death was myocardial infarction, sudden onset with the manner of death being natural.

■■ To qualify as a compensable injury, the exertion of the work necessary to precipitate the myocardial infarction had to be extraordinary and unusual compared to the employee's usual work in the course of his regular employment or that some unusual and unpredicted incident must have occurred that was the major cause of the physical harm.

> "[A] heart attack is compensable only if there is a causal connection between the heart attack and one's employment; and when it is established that the employee was putting forth unusual exertion at the time of the heart attack it is ordinarily held that the requirement of causal connection has been met." Absent unusual exertion, the applicable test is whether the required exertion producing the injury is too great for the employee undertaking the work, whatever the degree of exertion or the condition of his health, provided the exertion is either the sole or contributing cause of the injury.

*Beeson v. Landcoast*, 43 Ark. App. 132, 135, 862 S.W.2d 846, 847 (1993) (citations omitted).

While there was testimony that the concrete was drier than normal and that drier concrete required more physical exertion than wetter concrete, there was also testimony that the same concrete specifications for this project had been used on other projects that Mr. Ulibarri had worked. Mr. Baltz was present at the site the morning of Mr. Ulibarri's heart attack. He testified that he observed Mr. Ulibarri using a skreed board (a long board that is run along concrete to smooth it out) to complete the drain in the concrete pour and that he noticed nothing unusual until he saw that Mr. Ulibarri went down on one knee and shoulder, appearing to have caught his toe in the reinforcement. Apparently, Mr. Baltz did not become alarmed until he saw that Mr. Ulibarri did not move from that position. Emergency medical assistance was summoned, but Mr. Ulibarri died.

Appellant urges us to consider the factual similarities in the case before us and *Huffy Service First v. Ledbetter*, 76 Ark.App. 533, 69 S.W.3d 449 (2002). While the case contains many similar factors, there are notable differences. For example, at the time of the heart attacks, both decedents were working on hot days, in a space enclosed by two walls that prevented air from circulating and both had previously performed similar work under similar conditions. However, the temperature on the morning of Mr. Ulibarri's death was noted as 86 degrees. On the day of Mr. Ledbetter's death, the high reached between 103 and 105 degrees. In addition, there was testimony that it would be very unusual for Mr. Ledbetter to be working outside when the temperature reached 100 degrees. Furthermore, the normal work load for assembling tractors was estimated as fifteen to twenty tractors. On the day of Mr. Ledbetter's heart attack, the load was thirty tractors. While we recognize the similarities, on appeal our question is whether there is substantial evidence to support the Commission's decision. In that case, as here, the answer is yes.

Under these circumstances, we cannot say that the Commission's decision was not supported by substantial evidence. Accordingly, we affirm.

STROUD, C.J., and CRABTREE, J., agree.