AVAYA (Lucent Technologies) & Reliance National Insurance *v.* Cleaster BRYANT

CA 02-1122                                    105 S.W.3d 811

Court of Appeals of Arkansas
Division III
Opinion delivered May 21, 2003

*Roberts, Roberts & Russell, P.A.*, by: *Bud Roberts, Bruce D. Anible*, and *John D. Webster*, for appellant.

*Kenneth A. Olsen*, for appellee.

ANDREE LAYTON ROAF, Judge. This is an appeal from the Workers' Compensation Commission's order affirming and adopting the Administrative Law Judge's decision, which found that appellee Cleaster Bryant was entitled to a 15% whole body physical impairment rating for his compensable shoulder injury. On appeal, appellant Avaya (Lucent Technologies) challenges the manner in which Bryant's physician used the AMA *Guides* in calculating his impairment rating and argues that the Commission's decision in respect to these calculations is not supported by substantial evidence. We affirm.

On June 29, 1999, while employed by Avaya as a repairman, Bryant injured his shoulder when loading a control box onto a truck. In his deposition, Bryant stated that the control box started to fall, and as he was trying to catch it, he felt something pop in his right shoulder. Bryant was diagnosed with a rotator cuff tear and underwent arthroscopic surgery by Dr. Jimmy Tucker on July 26, 1999, to repair the tear. Bryant was released to full duty approximately six months later. After he continued to experience pain in his shoulder, Bryant was referred to Dr. David Collins in August 2000. In his office note of August 28, 2000, Dr. Collins stated that Bryant had a failed rotator cuff repair and that he was also symptomatic with acromioclavicular arthrosis. Bryant underwent a second surgery on his right shoulder in October 2000 to repair the failed rotator cuff. In addition, Dr. Collins performed an arthrotomy of the acromioclavicular joint ("AC joint") and a distal clavicle excision. Avaya accepted Bryant's injury as compensable and paid for all of his medical treatment related to the injury, as well as temporary total disability benefits. On February 28, 2001, Dr. Collins stated in an office note:

> There is no change in the physical appearance of the shoulder. There is very mild crepitation, although his range of motion with

assist is nearly full. He has 4+}/5 external rotation power, 5/5 deltoid and subscapularis.

Mr. Bryant has reached maximum medical improvement following a work-related injury to the right shoulder. He has sustained permanent partial impairment on the basis of injury to the rotator cuff, acromioclavicular joint, and surgical treatment of the shoulder environment. This would include alteration of the deltoid process, acromion process, coracoacromial ligament, rotator cuff, greater tuberosity, and acromioclavicular joint. Impairment is equal to 25% to the upper extremity, equal to 15% to the body as a whole.

Mr. Bryant is released to activities without restriction. He will be seen as needed.

Bryant made a claim for permanent partial disability benefits in the amount of 15% to the body as a whole, and Avaya controverted the rating, contending that it was excessive. The matter was submitted to the ALJ without a hearing on stipulated facts, briefs, medical exhibits, and Bryant's deposition. The parties stipulated that Bryant sustained a compensable shoulder injury on June 29, 1999, and that he earned an average weekly wage sufficient to entitle him to $303 for temporary total disability benefits and $227 for permanent partial disability benefits. In his deposition, Bryant stated that he had returned to work after being released without restrictions on February 28, 2001, and that he was performing the same type of job. Bryant further stated that he had not had any subsequent problems with his shoulder, that he was not currently taking any medications, and that he could perform his job without any problems.

In its brief, Avaya argued that the 15% impairment rating was invalid and excessive because Dr. Collins failed to properly calculate the extent of Bryant's disability in accordance with the AMA's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993) ("AMA *Guides*"). Avaya contended that a 15% impairment rating to the body as a whole is only appropriate for a 100% loss of function of the AC joint of the shoulder, according to the AMA *Guides*, and that the evidence showed that Bryant has had no residual problems with his shoulder since his release by Dr. Collins. Using the AMA *Guides*, Avaya calculated its own impairment rating based on the objective medical findings and alleged that Bryant was entitled to a maximum impairment rating of 6.6% for his shoulder injury.

In its decision of December 19, 2002, the ALJ disagreed with Avaya's argument and found that the 15% impairment rating assessed by Dr. Collins was not excessive. The ALJ noted that Bryant had to undergo two different surgeries to repair his shoulder injuries and that Dr. Collins was an orthopedist, whose specialty is the treatment of shoulder injuries and who has an excellent reputation in the orthopedic community. Avaya then appealed to the Commission, who affirmed and adopted the ALJ's findings of fact. The Commission also discussed Avaya's calculation of its impairment rating pursuant to the AMA *Guides* and disagreed with its method. The Commission calculated its own impairment rating and concluded that the objective medical findings warranted an impairment rating of 19%, according the AMA *Guides*. Because this rating was in excess of that assessed by Dr. Collins and requested by Bryant, the Commission found that the 15% impairment rating awarded by the ALJ was not excessive. Avaya now appeals from this ruling.

■ On appeal, Avaya argues that the decision of the Commission that Bryant was entitled to a 15% impairment rating to the body as a whole is not supported by substantial evidence. When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission. *Rice v. Georgia Pacific Corp.*, 72 Ark. App. 148, 35 S.W.3d 328 (2000). This court must affirm the decision of the Commission if it is supported by substantial evidence. *Id.* Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion of the Commission. *Id.* The issue on appeal is not whether the appellate court might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, the appellate court must affirm its decision. *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999).

■ Any determination of the existence or extent of physical impairment must be supported by objective and measurable physical findings. Ark. Code Ann. § 11-9-704(c)(1)(B) (Repl. 2002). Pursuant to Ark. Code Ann. § 11-9-522(g)(1) (Repl. 2002), the Commission must adopt an impairment rating guide to be used in the assessment of anatomical impairment, and the

Commission has adopted the AMA *Guides* to be used in this assessment. Arkansas Workers' Compensation Commission Rule 34. The Commission is authorized to decide which portions of the medical evidence to credit and to translate this medical evidence into a finding of permanent impairment using the AMA *Guides*. *Polk County v. Jones*, 74 Ark. App. 159, 47 S.W.3d 904 (2001). Thus, the Commission may assess its own impairment rating rather than rely solely on its determination of the validity of ratings assigned by physicians. *Id*.

Avaya argues on appeal, as it did before the Commission, that the 15% impairment rating assigned by Dr. Collins is excessive based on the objective medical evidence, and it has again calculated its own rating by applying the AMA *Guides* to the medical findings. A discussion of Avaya's method of calculating its impairment rating is necessary for a resolution of its argument on appeal.

The AMA *Guides* provide the following summary of steps for evaluating impairment to the shoulder: "Determine upper extremity impairments due to *loss of motion* (Section 3.1j, p. 41) and *other disorders* (Section 3.1m, p. 58) and *combine* the values to determine the upper extremity impairment involving the shoulder region." AMA *Guides*, p. 66. Finding that there is no basis for an assessment of permanent impairment due to loss of motion, Avaya calculates all of Bryant's impairment to his shoulder under Section 3.1m of the AMA *Guides*, which discusses other disorders involving the upper extremity. The impairments under Section 3.1m are evaluated separately, and "appropriate impairment percents from Tables 19 through 30 are multiplied by percents from Table 18" representing the impaired parts. *Id*. at 58. "Appropriate impairment percents are combined with other impairment percents using the Combined Values Chart (p. 322)." *Id*. Table 18 provides a 25% upper extremity impairment and a 15% whole person impairment for 100% loss of function of the AC joint of the shoulder.

Using Table 27 of Section 3.1m, which provides for impairment of the upper extremity after arthroplasty of specific bones and joints, Avaya asserts that Bryant is entitled to an impairment rating of 24% to the joint for a total shoulder resection arthroplasty and 10% for a distal clavicle resection arthroplasty. Avaya then refers to the Combined Values Chart and finds that these ratings combine to produce a 32% impairment rating to the joint. Avaya then multi-

plies this 32% rating by the 15% whole person rating provided in Table 18 for total loss of function of the AC joint and concludes that Bryant should be assessed a permanent impairment rating of 4.8% to the body as whole as a result of the arthroscopy and distal clavicle excision. Due to Dr. Collins's finding that Bryant also suffers from "very mild crepitation," Avaya also refers to Table 19, which provides for impairment from joint crepitation. However, because the lowest rating in Table 19, which is 10% impairment, only applies to "mild crepitation," Avaya contends that Bryant is not entitled to any degree of permanent impairment for this condition. In the alternative, if Bryant is entitled to permanent impairment for his very mild crepitation, Avaya argues that this 10% impairment combined with the other impairments results in a 39% impairment rating to the joint. When multiplied by the 15% rating in Table 18, this 39% impairment to the joint results in a rating of 5.9% to the body as a whole. Therefore, Avaya contends that Bryant is not entitled to an impairment rating of more than 5.9% to the body as a whole, based on the objective medical findings.

In its opinion, the Commission analyzed Avaya's calculation of Bryant's impairment rating and stated that it disagreed with Avaya's method. The Commission did not disagree with Avaya's finding that, using Table 27, Bryant was entitled to a 24% impairment rating for a total shoulder arthroplasty and a 10% impairment rating for a distal clavicle arthroplasty, or that these ratings combined to produce an impairment rating of 32%. However, the Commission acknowledged that there was confusion as to what part of the body the 32% rating relates. The Commission asserted that Avaya had misinterpreted Table 27 as assigning impairment values only to the *shoulder joint*, when Table 27 instead assigns impairment values from arthroplasty of specific bones and joints to the entire *upper extremity*. Thus, the Commission found that Avaya had incorrectly lowered the rating by too great a factor when it multiplied the 32% impairment rating by using the 15% whole-person factor from Table 18. Although it recognized that the AMA *Guides*, on page 58, state that the impairment percents from Tables 19 through 30 are to be multiplied by percents from Table 18 representing the impaired part, the Commission noted that the text on page 61 also states that "simple resection arthroplasty is given 40% impairment of the joint value," which is more than the combined rating that results from all of the procedures performed on Bryant, and that the ratings in Table 27 clearly are already calculated for the upper extremity, instead of just

the shoulder joint. The Commission also noted that the example calculations· provided in Section 3.1m were consistent with its interpretation.

The Commission instead used Table 3 on page 20, which provides a conversion from upper extremity impairment to whole body impairment, to find that the 32% upper extremity impairment rating converts to a 19% impairment rating to the body as a whole, exclusive of any additional impairment rating for Bryant's crepitation. Thus, the Commission found that a 19% impairment rating was appropriate based on the objective medical evidence and because this rating exceeded the rating that Dr. Collins had assigned, the Commission found that a preponderance of the evidence supported the ALJ's decision to award Bryant a 15% impairment rating.

■    We find that the Commission's decision is supported by substantial evidence. The Commission was correct in finding that Avaya's calculation of a 32% impairment rating applies to the entire upper extremity and that this rating should then be converted to an impairment rating to the body as a whole using Table 3. Avaya's method of multiplying the 32% rating by the 15% whole person factor in Table 18 is not appropriate, as Table 27 has already directly converted ratings resulting from particular procedures to an impairment of the upper extremity as a whole. Indeed, Table 27 is captioned "Impairment of the Upper Extremity After Arthroplasty of Specific Bones or Joints." As the Commission found, Table 3, rather than Table 18, should thus be used to convert the 32% impairment rating of the upper extremity to an impairment of the whole person, which in this case is 19%. AMA *Guides*, p. 20.

■ ■    Although Avaya argues that the text of Section 3.1m states that the impairment percentages from Tables 19 through 30 should all be multiplied by percents from Table 18 representing the impaired parts, the Commission found that the textual language notwithstanding, this directive could not apply to Table 27. The majority of the tables in Section 3.1m list the percentage of impairment to the joint itself, and not to the entire upper extremity as in Table 27. However, the tables that list percentage impairment to the joint also note within the tables themselves that these impairment values should be multiplied by the relative value of the joint found in Table 18. No such instruction appears in Table 27

or in Table 26, which is the only other table in this section to list impairment values to the upper extremity instead of to the joint. Also, in Section 3.1o, there is a summary of steps for evaluating impairments of the upper extremity, including the shoulder region. AMA *Guides*, p. 66. Step X provides that once the percentage of upper extremity impairment is calculated, this percentage should be converted to a whole-person impairment using Table 3. *Id.* Accordingly, we find that the Commission correctly found that the objective medical evidence warranted a 19% impairment rating pursuant to the AMA *Guides*, and that there is therefore substantial evidence to support its decision affirming the ALJ and finding that the award of a 15% permanent impairment rating to Bryant for his shoulder injury was not excessive.

Affirmed.

HART and BIRD, JJ., agree.