REYNOLDS METALS CO. ET AL *v.* CARMON CAIN

5-4339                                    420 S. W. 2d 872

Opinion delivered November 20, 1967

*McMillen, McMillen & Turner,* for appellant.

*McMath, Leatherman, Woods & Youngdahl;* By: *Silas Brewer,* for appellee.

CARLETON HARRIS, Chief Justice. This is a Workmen's Compensation case. Carmon Cain, 52 years of age, was an employee of Reynolds Metals Company, working at the Jones Mills plant near Malvern. On April 3, 1964, Cain was tightening electric bar nuts on an ore pot in the plant when he began to experience pain in his chest and arms, finally being forced to stop the work which he was doing. He continued to experience pain during the night, and consulted a physician the next day, following which he was hospitalized for three weeks. On August 31, Cain returned to work, and remained on the job until September 22, when, because of chest pains, he

was forced to quit. A claim for benefits was filed, but the referee held that, though the claimant was disabled, the disability did not arise out of his employment. Upon appeal to the full commission, the referee's decision was reversed, and the commission awarded disability benefits for permanent and total disability.[1] On appeal to the Hot Spring County Circuit Court, the judgment was affirmed, and from that judgment, appellant brings this appeal. It is urged that there is no substantial evidence to support a finding of an accident arising out of and in the course of the employment, and that there is no substantial evidence to support the finding that claimant's present disability is a result of the employment.

It is appellant's contention that appellee's attack was due to pre-existing arteriosclerotic heart disease, and his work had nothing to do with precipitating the attack. It is true that Cain was suffering from arteriosclerosis, and there is no dispute in the medical testimony on that point. The test, however, is whether the work that appellee was doing aggravated the pre-existing condition to the extent that it (the work) was a factor in bringing on the attack. *Reynolds Metals Company v. Robbins,* 231 Ark. 158, 328 S. W. 2d 489. Numerous cases hold in like manner. The commission set out pertinent facts, as follows:

"The claimant testified that on the two days preceding April 3, 1964, he had been running a jack hammer and that he experienced pain during this two day period. On the morning of April 3rd, he was tightening electric bar nuts on an ore pot located on the production line when he again experienced pain in his chest and arms which forced him to stop work."

The record supports the above statement.

---

[1]Additional medical evidence was presented to the full commission, *viz.*, depositions of Dr. Leeman H. King, Dr. Walter H. O'Neal, Dr. Philip T. Cullen, and Dr. Alfred Kahn, Jr.

Dr. Philip Cullen, who had examined the claimant and taken an electrocardiogram, testified that on the basis of the electrocardiogram, the history, and other physical findings, Cain suffered a myocardial infarction in April, 1964.[2] He stated that the exertion on the job placed demands upon Cain's heart which could not be met by the diseased arteries. The doctor, in a letter of January 30, 1965, stated that the myocardial infarction "was aggravated and precipitated by his activities that day [April 3]. A pre-existing relative coronary insufficiency might well have been aggravated by this type of activity involving a high energy cost. In this case there would be a definite connection between his job activities and the occurrence of an acute myocardial infarction in April of 1964." Dr. Cullen testified that the blood delivered by the narrowed artery was adequate for rest, but not for hard work.

"Well, it would have to be that he was there on the job performing certain duties because I think his arteries at that time were good enough for him to be home sitting in a chair and I don't think if he had he would have experienced the trouble on that particular day at that particular time."

The witness testified that an infarction implies permanent damage to the heart muscle itself, and that the attack suffered on April 3 was a component of the present disability. He stated that at the time he examined Cain (January, 1965), appellee had about "70% to the body as a whole permanent partial disability." He attributed 50% of this to the infarct.

Dr. Walter O'Neal, a Little Rock internist, who examined Cain, took a history, did an electrocardiogram, and made other tests, stated that Cain had "pre-existing arteriosclerotic heart disease and that he was working

_____

[2]He also testified that the coronary artery disease became evident in June, 1956, with the onset of an acute myocardial infarction.

at strenuous activity at the time that his last coronary occurred and that it was my opinion that there was a direct causal relationship between this activity and his myocardial infarct. * * *

"Well, to put it simply, physical stress requires more nutrition to the heart muscle by the way of blood flow than does the heart at rest. If the heart is inadequately supplied, then there occurs an area of ischemia, that is, an inadequate blood supply. This, in turn, produces an irritable area and the blood vessel itself, of course, which is ischemic will go into spasm."

Dr. Alfred Kahn, Jr., disagreed, being of the opinion that Cain's exertion did not have any effect on the underlying arteriosclerosis. He stated that he did not believe that the work activity contributed to the occlusion, though it was conceivable.

It can readily be seen that there was substantial evidence to support the finding by the commission, and, of course, that means we will not disturb the commission ruling. *Reynolds Metals Company* v. *Robbins, supra.* Actually, appellant's brief appears to be mainly directed to a criticism of past holdings in heart cases. Appellant states:

"Apparently, the Court now interprets the Act to include as accidental, within the meaning of the quoted provision,⁸ any heart attack which occurs on the job."

Of course, we do not know how a doctor would be able to say that the same result would have occurred— or would not have occurred— if the worker happened to be loading his boat with heavy equipment for a fishing trip. But here, Dr. Cullen did state that this man's work

---

⁸This refers to Ark. Stat. Ann. § 81-1302 (d) (Repl. 1960), defining "injury."

aggravated—and thereby hastened—the occlusion. Certainly, we have not held that *any* heart attack occurring on the job is compensable. For instance, only a few weeks ago (October 16, 1967), in *Ottenheimer Brothers Manufacturing Company* v. *Casey,* we denied compensation in a heart attack case, the claimant testifying that the attack occurred on the job. A reading of that case will disclose important distinctions from the case at bar.

However, in a long line of cases, too numerous to recite here, we have constantly held that we will not reverse the commission if there is substantial evidence to support its findings. This is an established rule (and the general rule over the nation), and, if it is to be changed, legislative action by our General Assembly will be required.

In line with the reasoning herein set out, the judgment of the Hot Spring County Circuit Court is affirmed.