KEMPNER'S and DODSON INSURANCE
GROUP *v.* John Q. HALL

CA 82-246                               646 S.W.2d 31

Court of Appeals of Arkansas
Opinion delivered February 16, 1983

*Boswell & Smith,* by: *David E. Smith,* for appellants.

*Pope, Shamburger, Buffalo & Ross,* by: *Robert D. Ross,* for appellee.

GEORGE K. CRACRAFT, Judge. Kempner's and Dodson Insurance Group, their workers' compensation carrier, appeal from a determination by the Arkansas Workers' Compensation Commission that they are liable for disability benefits and medical expenses incurred by appellee John Q. Hall as a result of a heart attack and bypass surgery. They contend that the appellee's disability and surgery were necessitated by a preexisting coronary artery disease and were not work related. We do not agree.

The appellee was manager of Kempner's Shoe Store at McCain Mall in North Little Rock. In November, 1979, while at his home, he engaged in some activity which brought on chest pains for which he was treated by Dr. Eugene Jones, a cardiologist. Dr. Jones determined that Hall was suffering from arteriosclerosis which was manifesting itself in pain defined as angina. Medication was prescribed to stabilize the pain but no myocardial infarction was confirmed. Dr. Jones advised hospitalization until the angina stabilized but Hall chose not to do so because he had no health insurance in effect at the time.

Hall returned to his work at Kempner's and on Saturday, December 20, 1980, while lifting some boxes of merchandise he felt immediate, oppressive pain in his chest. He worked until closing that day and spent Sunday in bed experiencing continued episodes of pain. He returned to work Monday although he still experienced pain. On Tuesday, December 23rd, he worked throughout his busiest day, with only a thirty minute break at 4:00 p.m., until closing time at 10:00 p.m. When he left the store he could hardly walk or drive his car. He was able to drive himself to Memorial Hospital where tests were performed upon him indicating the need for bypass surgery. He was transferred to Baptist Medical Center on January 2, 1980 where the surgery was performed by Dr. Weiss. The Commission found that there was a causal connection between the attack he suffered on December 20th and his employment at Kempner's. It awarded him disability benefits and medical expenses in-

curred as a result. The appellants contend that the bypass surgery was an elective operation to alleviate the pain caused by arteriosclerosis which preexisted appellee's employment with Kempner's and was not related to his employment.

In order to understand the argument and issue on this appeal two medical terms must be defined and the action our courts have previously taken with respect to this type case should be reviewed. These definitions are generally accepted and are supported by the medical testimony in the record before us. "Angina" is defined not as a disease but as a *symptom* of the underlying disease. The angina is the pain resulting from the underlying disease. In appellee's case it was a symptom of his arteriosclerosis or hardening of the arteries. We have recently held that aggravation of the *symptoms* of a preexisting condition are not compensable. In *Black* v. *Riverside Furniture Co.,* 6 Ark. App. 370, 642 S.W.2d 338 (1982) we held that where working conditions merely aggravated the angina, the symptoms of the preexisting, underlying arteriosclerosis, the employer was not liable for medical expenses or other consequences.

Myocardial infarction has been generally defined as an actual injury to the heart resulting in the death of cells. When enough cells have died an enzyme change in blood samples occurs. Where myocardial infarction is shown to have been aggravated or precipitated by the employment, awards of benefits have been sustained. *Reynolds Metals Co.* v. *Cain,* 243 Ark. 483, 420 S.W.2d 872 (1967); *Hoerner Waldorf Corp. et al* v. *Alford,* 255 Ark. 431, 500 S.W.2d 758 (1973). The appellants point out that Dr. Jones testified that he was treating the appellee for pre-infarction angina and found no myocardial infarction after the November and December incidents. It is further pointed out that on December 24th Dr. Kimber Stout treated appellee while he was in Memorial Hospital and also diagnosed the condition as coronary artery disease with significant angina and that "myocardial infarction was sought and ruled out." It is further pointed out that it was not until January 4, 1981, two days after the surgery was performed, that Dr. William Bishop in post-operative observation first made mention of a lateral myocardial infarction. Appellants do not contend

that there was no infarction. They argue that this evidence proved that the infarction occurred after the alleged incident and after he had been hospitalized to stabilize his angina. This argument and the evidence supporting it might have supported a contrary conclusion to the one made by the Commission. On appellate review, however, the question is whether the evidence supports the finding it did make. *Bankston v. Prime West Corp.*, 271 Ark. 727, 601 S.W.2d 586 (Ark. App. 1981). The record included a lengthy hypothetical question put to Dr. Weiss, the cardiovascular surgeon performing appellee's bypass operation, in which all of the facts and circumstances in evidence were recited. The hypothetical question also stated that he was not being requested to state an opinion with scientific precision or certainty. It further stated that they were not seeking his opinion as to whether or not the work related activities of appellee were the sole or only cause of the heart attack and the subsequent disability. The question squarely put to him was:

> . . . [W]hether or not his work activities were a cause, along with any other active or underlying factors, in contributing to or producing the heart attack and subsequent disability.

Dr. Weiss first stated that his role in the matter was that of the cardiovascular surgeon who performed the surgery on Mr. Hall following a previous myocardial infarction. He further stated:

> *It is my professional opinion that there can definitely be causal connection between effort, emotion, stress, exertion and other job-related activities to the precipitation of a myocardial infarction if the primary cause is present, that is, coronary atherosclerosis.* The heart is simply a mechanical pump, like any other mechanical pump, which requires energy in the form of blood and oxygen in order to do its job. It normally, at rest, the heart is working at about 30% of its capacity. As physical or occasionally emotional activity increases, the heart simply responds by increasing the cardiac output in order to meet the demand that the body and

its tissues are demanding. The heart will do this, in a manner of speaking, with total disrespect for its own welfare. If there is significant atherosclerosis of the coronary arteries and the heart continues to try to meet the demands that are placed on it, then eventually in many cases, the cardiac muscle becomes ischemic [deprived of adequate blood supply] and this can lead to death of the muscle cells or a heart attack. Obviously, angina represents a warning that impending damage exists and is the warning which tells a person to stop this activity. It should be noted that 25% of patients who sustain a myocardial infarction have had no angina whatsoever. (Emphasis supplied)

There is no requirement that a finding by the Commission be based on evidence which is mathematically or medically certain. Dr. Weiss testified that there had in fact been an infarction and that it could have resulted from the events of December 23rd. The Commission found that it did and we cannot say that reasonable minds after considering all of the evidence in this record could not have reached that conclusion.

Affirmed.