Quay BEESON *v.* LANDCOAST and Cigna

CA 92-1259                                          862 S.W.2d 846

Court of Appeals of Arkansas
En Banc
Opinion delivered September 29, 1993

*Dowd, Harrelson, Moore & Giles*, by: *Marshall H. Moore*, for appellant.

*Friday, Eldredge & Clark*, by: *James C. Baker, Jr.*, and *T. Wesley Holmes*, for appellee.

JOHN B. ROBBINS, Judge. The appellant, Quay Beeson, suffered an acute myocardial infarction while working at his job for appellee, Landcoast. The Administrative Law Judge found that his heart attack was compensable. Landcoast appealed to the full Commission, which reversed the Administrative Law Judge. It held that Beeson failed to prove that his heart attack was causally related to his employment. Beeson appeals, contending that the Commission's decision is not supported by substantial evidence. We disagree and affirm.

At the time of his heart attack, Beeson was 65 years old and had a family history of heart disease. He had worked for Landcoast for approximately seven years as an insulator. On the

morning of his heart attack, Beeson began his work day at 7:00 a.m. For the first couple of hours that morning, he carried boxes of insulation from a warehouse to the job site, a distance of about a quarter of a mile. An electric hoist lifted the boxes to the third floor of the building where Beeson unloaded them. After unloading for about thirty minutes, Beeson began to experience symptoms of a heart attack and was taken to a hospital. He was diagnosed with coronary artery disease caused by arteriosclerosis, which resulted in the myocardial infarction.

The issue presented on this appeal is whether there is any substantial evidence to support the Commission's holding that Beeson's heart attack was not causally related to his employment with Landcoast.

In reaching its decision, the Commission considered the opinions of four physicians, Dr. Abdul Waheed, Dr. James Hurley, Dr. Thomas Pullig and Dr. James Doherty. Three of these doctors opined that Beeson's heart attack was precipitated by his work, while the fourth doctor was of the opinion that it was not.

Dr. Waheed, a cardiologist, premised his opinion that Beeson's employment precipitated his heart attack, at least in part, on his misunderstanding that the heart attack occurred while Beeson was climbing stairs at work. Dr. Hurley, a cardiologist, admitted that he did not know where Beeson was when his pain began, but was of the opinion that if his pain began when he was at work then his job caused it.

Dr. Pullig did not state the activities which he understood Beeson was performing on his job at the time of the heart attack, but opined that his employment precipitated the attack. He based this conclusion on his general statement that "it is established that physical exertion can precipitate a heart attack."

Dr. Doherty, a professor of medicine and pharmacology at the University of Arkansas for Medical Science and Director of Cardiovascular Research at the V. A. Medical Center, reviewed Beeson's medical records and a transcript of his deposition. His report notes that Beeson's arteriosclerosis took many years to develop and that Beeson had a family history of heart disease. It was his opinion that there was no relationship between Beeson's

heart disease and his work, except in a temporal sense, in that he was on his job when he experienced his first symptoms.

A heart attack is compensable only if there is a causal connection between the heart attack and one's employment; and when it is established that the employee was putting forth unusual exertion at the time of the heart attack it is ordinarily held that the requirement of causal connection has been met. *Fowler* v. *McHenry*, 22 Ark. App. 196, 737 S.W.2d 663 (1987). Absent "unusual exertion" the applicable test is whether the required exertion producing the injury is too great for the employee undertaking the work, whatever the degree of exertion or the condition of his health, provided the exertion is either the sole or contributing cause of the injury. *Fowler, supra.*

When reviewing a decision of the Workers' Compensation Commission on appeal, we must view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if those findings are supported by substantial evidence. *Shaw* v. *Commercial Refrigeration*, 36 Ark. App. 76, 818 S.W.2d 589 (1991). In making our review we recognize that the Commission has the duty of weighing medical evidence as it does any other evidence, and if the evidence is conflicting, the resolution of the conflict is a question of fact for the Commission. *Mack* v. *Tyson Foods, Inc.*, 28 Ark. App. 229, 771 S.W.2d 794 (1989). On appeal to this court, the issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Bearden Lumber Co.* v. *Boyd*, 7 Ark. App. 65, 644 S.W.2d 321 (1983).

We may well have decided this case differently if our standard of review was to weigh the evidence and determine where the preponderance of the evidence lay. However, this is not our function. Although three medical experts were of the opinion that Beeson's employment precipitated his heart attack, it is obvious that the Commission found Dr. Doherty's opinion to be more credible. We hold that Dr. Doherty's report constitutes substantial evidence in support of the Commission's decision. Consequently, we must affirm the Commission's holding that Beeson's myocardial infarction was not casually related to his

employment.

Affirmed.

MAYFIELD and ROGERS, JJ., dissent.

MELVIN MAYFIELD, Judge, dissenting. I do not believe that the decision of the Workers' Compensation Commission in this case is supported by substantial evidence; therefore, I cannot agree to affirm it. The majority opinion of this court states that "we may have well decided this case differently if our standard of review was to weigh the evidence and determine where the preponderance of the evidence lay." That, of course, is not our standard of review but — as the majority also recognizes — our standard requires that we reverse a decision of the Commission if we are convinced that fair-minded persons, with the same facts before them, could not have reached the conclusion arrived at by the Commission. *International Paper Co.* v. *Tuberville*, 302 Ark. 22, 786 S.W.2d 830 (1990); *Lockeby* v. *Massey Pulpwood, Inc.*, 35 Ark. App. 108, 812 S.W.2d 700 (1991). And in *Pickens-Band Construction Co.* v. *Case*, 266 Ark. 323, 584 S.W.2d 21 (1979), the Arkansas Supreme Court said that "any" evidence is not substantial evidence. 266 Ark. at 330, 584 S.W.2d 25.

The law, at the time involved in this case, regarding the compensability of heart attacks which occurred on the job is also recognized in the majority opinion by the quotation from *Fowler* v. *McHenry*, 22 Ark. App. 196, 737 S.W.2d 663 (1987), that states the applicable test "is whether the required exertion producing the injury is too great for the employee undertaking the work." To put that quote in proper perspective, in *Reynolds Metal Company* v. *Robbins*, 231 Ark. 158, 328 S.W.2d 489 (1959), relied upon in *Fowler*, the Arkansas Supreme Court explained:

> The question therefore before this Court, is whether there was substantial evidence to show that Robbins' condition was aggravated by the work performed, as heretofore set out; or stated differently, whether his death occurred sooner than would have otherwise occurred if the work had not been performed.

231 Ark. at 162, 328 S.W.2d at 491. In the instant case the administrative law judge found:

I conclude from the testimony, that although the claimant was not climbing stairs at the time he first experienced chest pains, he was engaged in the heavy manual labor of unloading the boxes of insulation material from the hoist. I therefore find that the claimant has established by a preponderance of the evidence that the physical exertion of his employment was a precipitating factor in the myocardial infarction and is therefore a compensable injury.

The full Commission did not agree with the law judge and in an opinion, with one member dissenting, held as follows:

In support of his contention that a causal relationship exists between his employment and his myocardial infarction, the claimant relies upon the opinions of three physicians. The first is Dr. Abdul Waheed, a cardiologist who testified that the claimant's employment precipitated his heart attack because the heart attack occurred while claimant was climbing stairs at work. According to claimant's testimony, this is not a correct history. Claimant was not climbing stairs at the time of his myocardial infarction. Therefore, Dr. Waheed's opinion is based upon an incorrect history.

Claimant also relies upon the opinion of Dr. James Hurley, who opined that a causal connection exists even though he admitted that he had no idea where the claimant was when this pain started. However, Dr. Hurley opined that if the claimant's pain started when he was at work then it was obvious that his job caused the heart attack. The fact that an individual is at work when a heart attack occurs is not sufficient, in and of itself, to prove a causal connection.

Finally, claimant relies upon the opinion of Dr. Thomas Pullig who opined that it is established that physical exertion can precipitate a heart attack; therefore, he opined that claimant's employment precipitated his heart attack. Significantly, Dr. Pullig does not state what activities he believes the claimant was performing on the date in question to support his opinion that claimant's employment precipitated his heart attack.

It appears that the opinions of these physicians are based upon the fact that the claimant was at work at the time that his heart attack occurred as evidence that causal connection exists. We find that the opinion of Dr. James Dogherty, [sic] a cardiologist at the University of Arkansas for Medical Sciences, is entitled to greater weight. Dr. Dogherty [sic] noted that the claimant suffered from arteriosclerosis which took many years to develop. Although the claimant was engaged in some activity at the time of the myocardial infarction, Dr. Daugherty [sic] opined that the relationship was merely coincidental and that the claimant's employment did not precipitate or contribute to the heart attack.

At this point, I want to point out the medical evidence as it exists in the record.

A medical record from Magnolia Hospital dated October 12, 1989, shows that appellant was admitted at 11:46 a.m. with an acute myocardial infarction, anterior, and was discharged to transfer to St. Michael Hospital in Texarkana by helicopter at 5:53 p.m.

The first St. Michael Hospital record shows that appellant was admitted on October 12, 1989, with chest pain which first occurred about 11:00 a.m. while he was "climbing the stairs." The family history on this admission report shows appellant as a non-smoker (even though 20 years ago he did smoke for a short period of time), non-drinker, with heart disease in the family. A cardiac catheterization performed on October 16 showed appellant had 99% proximal right coronary lesion but it was felt he could be adequately maintained with medication. However, after appellant had three separate episodes of pain requiring Morphine Sulfate for relief during the weekend, a coronary (balloon) angioplasty was performed on October 24, 1989. Appellant was discharged on October 26, 1989.

On November 4, 1989, appellant again presented himself to the Magnolia Hospital emergency room with chest pain which felt like his previous attack but not as severe and a history of indigestion all day. Appellant was transferred to St. Michael by ambulance, placed on Coumadin, and discharged.

A letter dated January 3, 1990, from Dr. Abdul Waheed, a Texarkana cardiologist who treated appellant at St. Michael, states:

> As to the cause of his heart attack, it is clear the heart attacks are caused by atherosclerosis of the arteries, and since this occurred while climbing up the stairs at work, certainly the physical exertion of this precipitated the heart attack.

Dr. James M. Hurley, who performed the angioplasty on appellant, wrote on December 18, 1990, that the only information he had about appellant's heart attack came from Dr. Waheed's report which said appellant's chest pain began while he was climbing stairs at work. He stated:

> If the man's pain started at his workplace, then the job caused it. Obviously, the job itself did not cause atherosclerotic disease but the stress of the job did precipitate the myocardial infarction.

Dr. Thomas A. Pullig, appellant's general physician in Magnolia, wrote on December 18, 1990:

> It is well established that the cause of heart attack is coronary artery disease caused by arteriosclerosis. It is also well established that physical exertion beyond a certain point can precipitate heart attack which is caused by coronary artery disease. It is therefore my opinion that the physical exertion that Mr. Beeson was performing on the day of his heart attack was a definite precipitating factor for his acute myocardial infarction.

Counsel for appellees apparently sent a copy of appellant's medical records to James E. Doherty, M.D., at the University of Arkansas for Medical Sciences Cardiovascular Division. On June 20, 1990, Dr. Doherty wrote a letter expressing his doubt that appellant's heart attack was related to his occupation. However, from reading that letter it appears that Dr. Doherty reviewed only those records pertaining to appellant's *second* hospitalization, November 4 through 9, 1989. He does not mention the October 12, 1989, episode. However, on April 10, 1991, Dr. Doherty wrote another letter in which it is apparent that he had reviewed appellant's entire heart attack record and

appellant's deposition. He stated:

> As to my opinion regarding the patient[']s job and its relation to his heart attack:
>
>> Mr. Beeson was at work 10-12-89 when he first experienced symptoms of his myocardial infarction. His disease, coronary atherosclerosis, is many years in developing and has no relationship to his work, except in a temporal fashion — he was on the job when he experienced his first symptoms.
>
> His family history of heart disease is probably more important in this regard.

Based on the above medical evidence, the Commission found against the appellant's claim. In his challenge to the sufficiency of the evidence to support the Commission's finding, appellant points out that the Commission's opinion notes that Dr. Waheed was not factually correct in stating that appellant's heart attack occurred while climbing stairs. However, the appellant points out that the record shows that he had climbed seven flights of stairs to the top of the tower when he went to work on the morning of his attack; that after he had looked at this area where the insulation was to be installed, the appellant spent the next two hours making numerous trips between the tower and the warehouse, walking a quarter mile each way, while carrying on his shoulder boxes of insulation weighing from 75 to 150 pounds; and that he had been unloading the heavy boxes of insulation from the hoist on the third floor for about thirty minutes at the time his heart attack began. The appellant argues that the Commission's opinion minimizes his exertion and maximizes a verbal discrepancy that the law judge readily recognized as unrelated to credibility and to the question of causal relationship between appellant's work and his heart attack.

In support of his argument, appellant relies on *Cox* v. *Nashville Livestock Commission*, 28 Ark. App. 139, 771 S.W.2d 786 (1989), where we held that debilitating angina pain constituted a compensable injury. After reviewing numerous cases, we quoted from *Dougan* v. *Booker*, 241 Ark. 224, 407 S.W.2d 369 (1966), which quoted from *Triebsch* v. *Athletic Mining & Smelting Co.*, 218 Ark. 379, 237 S.W.2d 26 (1951), as follows:

Therefore, to summarize: we have in the case at bar undisputed facts which are similar in essential respects to those which existed in the six cases hereinafter discussed, in each of which compensation was awarded. These facts are: *a pre-existing ailment, an increased and overtaxing effort to accomplish the workload under the conditions existing, and a collapsed worker resulting therefrom.* These make a case of accidental injury within the purview of the workers' compensation law. (Emphasis added in *Dougan.*)

28 Ark. App. at 143, 771 S.W.2d at 788-89. Appellant argues that each of these three requirements is also present in this case. He had preexisting atherosclerosis, he had worked strenuously, lifting and carrying, and moving heavy boxes of insulation, for over three hours on a warm day, and he collapsed with a heart attack. Appellant quotes *C.J. Horner Company* v. *Stringfellow*, 14 Ark. App. 138, 685 S.W.2d 533 (1985), in which the deceased had a desk job and we affirmed the Commission's holding that the stress of the job brought on the deceased's heart attack. We said:

It is well settled that an award of benefits will be sustained by the Court where a myocardial infarction is shown to have been aggravated or precipitated by the employment. *Kempner's* v. *Hall*, 7 Ark. App. 181, 646 S.W.2d 31 (1983). There is no requirement in Arkansas that in order for a heart attack to be compensable, it must be caused or brought on by some unusual exertion rather than by the employee's regular work. *Hoerner Waldorf Corp.* v. *Alford*, 255 Ark. 431, 500 S.W.2d 758 (1973).

14 Ark. App. at 142, 685 S.W.2d at 535.

Because I agree with the appellant's argument and because I do not believe fair-minded persons, with the same evidence before them, could reach the decision reached by the Commission in this case, I would reverse and remand for the Commission to award compensation benefits.

ROGERS, J., joins in this dissent.