HUFFY SERVICE FIRST and Lumbermens
Mutual Casualty *v.* Anita LEDBETTER

CA 01-989                                69 S.W.3d 449

Court of Appeals of Arkansas
Division IV
Opinion delivered March 13, 2002

*Rieves, Rubens & Mayton,* by: *Eric Newkirk,* for appellants.

*Baxter, Jensen, Young & Houston,* by: *Terence C. Jensen,* for appellee.

WENDELL L. GRIFFEN, Judge. The employee in this workers' compensation case, Doyle Ledbetter, suffered a fatal heart attack while employed by appellant, Huffy Service First. The

Workers' Compensation Commission awarded his wife, Anita Ledbetter, dependency benefits. Mrs. Ledbetter is the appellee in this case. Appellant appeals from the Commission's order awarding benefits, arguing that the Commission erred because 1) appellee failed to prove that an accident was the major cause of Ledbetter's heart attack; 2) its interpretation of the "extraordinary and unusual exertion" requirement was flawed; and 3) its decision that Ledbetter sustained a compensable heart attack is not supported by substantial evidence. We disagree and affirm.

Ledbetter had been employed by appellant since 1996 as an assembler for lawn tractors, exercise equipment, grills, and similar items. This job required him to perform on-site assembly at various stores such as Sears, Wal-Mart, and Lowe's. On August 11, 1997, at approximately 3:00 p.m., Ledbetter suffered a heart attack while assembling lawn tractors at the Sears store in Hot Springs. He was transported to the emergency room at St. Joseph's Regional Health Center. The ambulance service record indicated that he complained of heat exhaustion. The emergency-room doctor's note indicated, "pt had worked hard on tractor became diaphoratic [profusely perspirated]."

Dr. Balakrishna Pai, a cardiologist who treated Ledbetter on the day he died, testified by deposition that he arrived at the emergency room at 4:00 p.m. At that time, Ledbetter was complaining of chest pain and was sweating. Dr. Pai suspected that he was having a heart attack. However, Dr. Pai was not present at the time of Ledbetter's death because he had another cardiac emergency at a different hospital.

The emergency-room record, as dictated by Dr. James Tutton, indicated that Ledbetter's chief complaint was severe shortness of breath and profuse sweating. Dr. Tutton noted that there were no preceding symptoms and that Ledbetter experienced chest discomfort that was "hard to discern." Dr. Tutton also noted that Ledbetter was in marked distress, was sweating profusely, and appeared to be cool. Ledbetter's heart rate varied from 120-135 and his diastolic blood pressure reading was 100. Dr. Tutton further noted that Ledbetter proceeded on a "downhill fashion," and the doctors "were never able to convert him to a completely sinus rhythm." Two other doctors considered taking Ledbetter to the heart catheter laboratory. However, before further action was taken, Ledbetter went into heart failure and could not be resuscitated. He died at approximately 5:45 p.m that same day. Dr. Tutton's clinical impression was that Ledbetter suffered a heart attack.

Appellant controverted appellee's claim and a hearing was held before an Administrative Law Judge (ALJ). The ALJ found that appellee did not prove that the work activity in which Ledbetter was engaged in was the major cause of his heart attack and, therefore, denied her request for dependency benefits.

At the hearing before the ALJ, Allen Murford, Ledbetter's former coworker, testified regarding the conditions under which he and Ledbetter worked. According to Murford, a normal load contained fifteen to twenty tractors and each tractor required the assembly of fifteen to twenty pieces. He testified that all tractors that were delivered had to be assembled on the same day because Sears had no place to store the unassembled pieces. Murford estimated that a load of fifteen tractors would take them approximately four to four-and-one-half hours to assemble.

When Ledbetter and Murford assembled bicycles, grills, or sporting equipment, they worked indoors. However, when they assembled lawn tractors, they worked outside in Sears's pick-up/delivery area. The ground in the area was covered with black asphalt and the space was enclosed by two walls that prevented air from circulating. Murford testified that the heat in this area was "unbearable," was hot enough to "fry an egg," and caused them to burn their hands on the tools. Because of the heat, they began work early in the morning, around 7:00 or 7:30, in order to escape the afternoon heat. However, there were times when they were required to work in the afternoon heat and sometimes worked as late as 8:30 p.m. Murford indicated that, unlike Sears, other stores, such as Lowe's or Wal-Mart, allowed them to bring the tractors inside to assemble or provided fans to use when the weather was hot.

Murford left his employ with appellant because he could not handle the working conditions in the Sears location in Hot Springs. He said when he and Ledbetter worked together that Ledbetter never complained about having a heart condition or suffering from chest pains. Murford stated that a load of twenty or twenty-five tractors would be a very unusual load for one person and would be very difficult to assemble in one day. He further stated that it would be very unusual to be working outside where the temperature reached 100 degrees.

Appellee testified that the high temperature on August 11 was between 103 and 105 degrees Fahrenheit. She said that her husband told her that he had about thirty tractors to assemble that day, which she stated was an unusually large amount. Appellee further

stated that Ledbetter told her that it was going to be difficult to assemble thirty tractors and that it was going to be "awfully hot." Appellee, a cardiac nurse, testified that her husband made no complaints of chest pain nor displayed any of the symptoms of heart trouble prior to his death.

Vicki Norman, the Ledbetters' daughter, arrived at the hospital at approximately 4:30 p.m. Norman is a critical-care nurse. She testified that the heat index for that day was 105 degrees. She said that when she saw her father in the emergency room, he was pale and clammy and appeared to be dehydrated. Norman stated that his clothes were "frosted white with dried salt" from sweating, which was unusual. She testified that when she asked him what happened, he said, "I just worked too hard and it was too hot." He also told her that he was attempting to assemble thirty lawn tractors that day. Norman stated that her father did not complain of chest pains nor display symptoms of heart trouble prior to his heart attack. To her knowledge, the maximum number of tractors that her father had assembled in one day was twelve.

Dr. Pai testified that he had seen Ledbetter in 1994 because he was experiencing chest pain. Dr. Pai conducted a stress test and tested him for plaque build-up at that time, but the results were negative and Dr. Pai released Ledbetter to the care of his regular physician. Dr. Pai testified that it is not uncommon for an individual to pass a stress test but still have heart disease. However, he also testified that most heart attacks are caused by the accumulation of plaque in the arteries and that most people have a preexisting accumulation of plaque. Dr. Pai could not state for certain whether Ledbetter had a prior build-up of plaque, but he was treating him under the assumption that he had a blockage in his arteries because that was the way Dr. Pai treated almost all heart attacks. He stated that the build-up of plaque is a process, not a one time event, and that plaque continues to build up

> it becomes unstable and ruptures. That is the real reason for the heart attack. But somewhere down the line, the external events can hasten this rupture . . . medically I would say that the plaque is the reason for the heart attack, but the plaque rupture can be due to severe exertion.

However, Dr. Pai agreed that Ledbetter had no prior cardiac problems of which he was aware. When asked whether Ledbetter's physical exertion on August 11 was the precipitating factor resulting in his heart attack, Dr. Pai testified that it was "more likely than

not" that Ledbetter's "extreme exhaustion . . . precipitated the event." When asked specifically if the physical exertion was more than fifty percent of the cause of the heart attack, he responded, "Yes. I would say more likely than not."

According to Michael Kidd, appellant's area manager, Ledbetter requested to be off the week prior to August 11, 1997, because he was having chest pains and wanted to see a doctor. He conceded that other employees had complained about the working conditions at Sears and that it was "very possible" that Ledbetter had complained to him about the working conditions there. Kidd corroborated appellee's testimony regarding the number of tractors to be assembled and Murford's testimony that the tractors were assembled outside. He also confirmed that Ledbetter was working alone on August 11.

Kidd admitted that Sears preferred for all of the tractors to be assembled the same day. He said that "whatever Sears pulled out there that day, they wanted it assembled." He further admitted that when Ledbetter and Murford worked together, their practice was to assemble all of the tractors the same day the pieces were delivered. However, Kidd maintained there was no quota and that whatever remained unassembled could be assembled later in the week. Kidd also testified that he would never expect one person to assemble thirty tractors in one day and that Ledbetter could have completed the remainder of the work later that week and could have obtained assistance. He stated that Sears could have pulled the tractors inside overnight to allow Ledbetter to finish assembling later in the week.

Kidd asserted that assembling lawn tractors does not require any heavy lifting or carrying of heavy objects. He explained that there are two different types of lawn tractors that Ledbetter assembled: preassembled tractors with a deck and preassembled tractors without a deck. For the tractors without a deck, Ledbetter would be required to assemble the deck, assemble the belts and tighten them to the frame. At that point, the work on both types of tractors is the same. Ledbetter would then be required to attach the steering wheels, hook up the batteries, and attach any accessories using impact wrenches or sockets.

Based on this evidence, the ALJ denied appellee's requests for benefits. Appellee appealed to the Commission, which reversed. The Commission attached significant weight to Dr. Pai's opinion regarding the major cause of the heart attack and found that his

testimony was stated within a reasonable degree of medical certainty. The Commission noted that Dr. Pai testified that Ledbetter tested negative for any cardiac abnormalities, including cholesterol plaque, in 1994. Further, the Commission noted that although Dr. Pai testified that most heart attacks are due to an accumulation of plaque in the arteries, he could not state whether Ledbetter suffered from a pre-existing build-up of arterial plaque, and the Commission did not find any credible evidence indicating such a condition existed. The Commission found that an inference that a buildup of plaque caused Ledbetter's heart attack would be "speculative and conjectural."

Further, the Commission found that Dr. Pai's opinion was stated within a reasonable degree of medical certainty, noting that he agreed it was "most likely or most probable" that the physical exhaustion was the precipitating event for the onset of the heart attack.

Citing Murford's testimony regarding the exhaustive heat environment that he and Ledbetter were subjected to while assembling lawn tractors at the Sears store, the Commission further found that appellee proved that the work Ledbetter was performing on August 11, 1997, was unusual work in the course of his regular employment. The Commission noted that Ledbetter was not allowed to assemble the tractors indoors, that his practice was to assemble the tractors the same day the pieces were delivered, and that the testimony established he was attempting to assemble thirty tractors that day. However, the Commission also noted that the exact number of tractors to be assembled was not the controlling factor in determining whether Ledbetter's work was extraordinary and unusual in comparison to his usual work.

Although Ledbetter had worked in the same location with Murford, he and Murford typically worked during the cooler hours of the morning and between them, may have assembled twenty to twenty-five tractors. The Commission found that regardless of the number of tractors Ledbetter was required to assemble, his work that day was extraordinary and unusual because he was working alone in the intense heat in the afternoon sun, outside on black asphalt, in an enclosed space with no air circulation, where no other store required him to work in similar conditions. Further, although Ledbetter had worked at Sears for two consecutive summers, two to three days per week, his usual and regular employment had never before required hospitalization. Therefore, the Commission

reversed the decision of the ALJ and awarded appellee dependency benefits. This appeal followed.

## I. Whether Ledbetter's Accident was the Major Cause of His Heart Attack

Appellant maintains that the Commission made an error of law with regard to the causation requirement and the "extraordinary and unusual" requirement and that these factors show that its decision was not supported by substantial evidence. Appellant argues that reasonable minds could not conclude that Ledbetter's heart attack was the result of any single work activity that required significant exertion. To the contrary, we hold that the same evidence supporting the Commission's findings that Ledbetter's accident was the major cause of his heart attack and that his work required extraordinary and unusual exertion also supports the Commission's award of dependency benefits.

■ In reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *See Geo Specialty Chemical v. Clingan*, 69 Ark. App. 369, 13 S.W.3d 218 (2000). The issue on appeal is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm the Commission's decision. *See Cont'l Express, Inc. v. Freeman*, 66 Ark. App. 102, 989 S.W.2d 538 (1999). Even where a preponderance of the evidence might indicate a contrary result, we will affirm if reasonable minds could reach the Commission's conclusion. *See Henson v. Club Prod.*, 22 Ark. App. 136, 736 S.W.2d 290 (1987).

■ Compensation for injuries due to heart or lung illness are governed by Arkansas Code Annotated section 11-9-114 (1996), which provides:

> (a) A cardiovascular, coronary, pulmonary, respiratory, or cerebrovascular accident or myocardial infarction causing injury, illness, or death is a compensable injury only if, in relation to other factors contributing to the physical harm, an accident is the major cause of the physical harm.

(b)(1) An injury or disease included in subsection (a) of this section shall not be deemed to be a compensable injury unless it is shown that the exertion of the work necessary to precipitate the disability or death was extraordinary and unusual in comparison to the employee's usual work in the course of the employee's regular employment or, alternately, that some unusual and unpredicted incident occurred which is found to have been the major cause of the physical harm.

(2) Stress, physical or mental, shall not be considered in determining whether the employee or claimant has met his burden of proof.

Thus, this statute requires a claimant to show that the injury is the major cause of his harm and that the work precipitating the injury was extraordinary and unusual in comparison to his regular employment. Major cause means more than fifty percent of the cause. *See* Ark. Code Ann. § 11-9-102(14)(A) (Supp. 2001).

Appellant maintains that the Commission failed to address the "accident" portion of the statute and that there is no evidence to suggest that a specific event caused the heart attack. It argues that continuous exertion and work under extreme conditions is not a specific incident, but is a gradual-onset type of injury, and that heart attacks are not compensable as a gradual-onset injury. Appellant also asserts that the medical evidence does not establish that Ledbetter's work-related conditions were the major cause of his heart attack because Dr. Pai did not indicate within a reasonable degree of medical certainty that the major cause of Ledbetter's heart attack was work-related as opposed to being caused by preexisting heart disease.

■ Appellant's argument is without merit for two reasons. First, there is no evidence that Ledbetter had any preexisting heart disease. Dr. Pai testified that he had seen appellant in 1994 because he was experiencing chest pain at that time. Dr. Pai conducted a stress test on him at that time, but the results were negative and Dr. Pai released Ledbetter to the care of his regular physician. Other than Ledbetter's checkup in 1994, which revealed negative tests results for heart disease, there is no further treatment of record indicating that Ledbetter suffered cardiac problems until his treatment at the emergency room on August 11. Although Dr. Pai was treating appellant under the assumption that he had a blockage in his arteries because that was the way he treated almost all heart attacks, he could not state for certain whether Ledbetter had a prior

build-up of plaque and he agreed that Ledbetter had no prior cardiac problems of which he was aware.

■ Further, although Kidd testified that Ledbetter complained of chest pains the week prior to his death, his testimony is contradicted by Ledbetter's wife and daughter, both of whom are nurses and who are familiar with the symptoms of heart disease. It is the exclusive function of the Commission to determine the credibility of witnesses and the weight to be given their testimony. *See Williams v. Prostaff Temps.*, 64 Ark. App. 128, 979 S.W.2d 911 (1998).

■ Second, appellant's argument must fail because Dr. Pai's testimony was stated with sufficient certainty. Our supreme court has held that where a medical opinion is sufficiently clear to remove any reason for the trier of fact to have to guess at the cause of the injury, that opinion is stated within a reasonable degree of medical certainty. *See Howell v. Schroll Tech.*, 343 Ark. 297, 35 S.W.3d 800 (2001). However, expert opinions based upon "could," "may," or "possibly" lack the definiteness required to meet claimant's burden to prove the causal connection. *See Francis v. Gaylord Container Corp.*, 341 Ark. 527, 20 S.W.3d 280 (2000).

■ Although Dr. Pai did not use the words, "within a reasonable degree of medical certainty," his opinion is sufficiently clear that the trier of fact is not required to guess at the cause of the injury. When asked whether Ledbetter's physical exhaustion on August 11 was the precipitating factor resulting in his heart attack, Dr. Pai testified that it was "more likely than not" that the Ledbetter's "extreme exhaustion . . . precipitated the event." When asked specifically if the physical exertion was more than fifty percent of the cause of the heart attack, Dr. Pai responded, "Yes. I would say more likely than not." The Commission correctly noted that Dr. Pai did not use such language as "could," "may," or "possibly," and found that Dr. Pai's opinion that Ledbetter's duties "more than likely" precipitated his heart attack was stated within a reasonable degree of medical certainty. *See Wentz v. Service Master*, 75 Ark. App. 296, 57 S.W.3d 753 (2001).

■ It is true, as appellant argues, that the term "accident" within the meaning of section 11-9-114(a) has been construed to require proof that it is caused by a specific incident and identifiable by time and place of occurrence. *See City of Blytheville v. McCormick*, 56 Ark. App. 149, 939 S.W.2d 855 (1997). However, Dr. Pai's testimony, when combined with the fact that Ledbetter had been working in extreme heat for the immediate seven or eight hours

preceding the heart attack and was still working when the heart attack occurred, satisfies the requirement to show a specific incident identifiable by time and place leading to the heart attack. *See Williford v. City of North Little Rock*, 62 Ark. App. 198, 969 S.W.2d 687 (1998) (reversing and awarding benefits where claimant was a fireman who suffered a heart attack within two days after taking the Firefighters Encounter and Agility Test under extremely hot and humid conditions). Finally, even if Ledbetter had a preexisting heart condition, this would not preclude a finding that his work conditions were the major cause of his heart attack. *See id.* (reversing and awarding benefits where claimant had severe preexisting cardiovascular disease).

Therefore, we hold that the Commission did not err in finding that Ledbetter's work-related conditions were the major cause of his heart attack.

### II. Whether the Commission Properly Interpreted the "Extraordinary and Unusual Exertion" Requirement

In addition to proving that the accident is the major cause of the physical harm, a claimant seeking benefits under section 11-9-114 must also show that "the exertion of the work necessary to precipitate the disability or death was extraordinary or unusual." *See* Ark. Code Ann. § 11-9-114(b). Appellant's second argument is that the Commission misinterpreted or misapplied the extraordinary and unusual exertion requirement.

Specifically, appellant argues that the Commission erred as a matter of law because it did not address the exertion requirement, and because Ledbetter's job did not require unusual exertion the day of his heart attack. It also argues that the heat of the day should not "even remotely" be a consideration, because it was not extraordinary and unusual in comparison to his usual work. Appellee counters that her husband's working conditions required extraordinary and unusual exertion because he had to assemble a large load of tractors on an extremely hot day and because Sears was the only store that did not provide some type of shade or ventilation fan.

Appellant asserts that the Commission disregarded the number of tractors to be assembled and, therefore, its ruling is erroneous because it does not address the exertion requirement. This assertion

is itself erroneous. The Commission specifically noted that the number of tractors to be assembled was not dispositive and further stated, "[w]hether there were 30 lawn tractors for assembly[1] or only an average of 15-20, the preponderance of the evidence shows that the decedent's work was extraordinary and unusual in comparison to his usual work."

▇ The Commission may not have relied on the number of tractors to be assembled to reach its findings, but it did not fail to address the exertion requirement. It found that the work required unusual and extraordinary exertion because Ledbetter was working alone in the intense heat in the late afternoon sun, on black asphalt, in an enclosed space with no circulation. The Commission further noted that no other store required Ledbetter to work in similar conditions; that is, other stores allowed him to work indoors or provided some sort or ventilation or fan. Each of these facts relates to the exertion required to perform Ledbetter's job duties. Thus, the Commission did not ignore the exertion requirement.

Nor did the Commission err in finding that this requirement was met. Appellant argues that Ledbetter's job did not require unusual exertion. It maintains that Kidd's testimony demonstrates Ledbetter's work was not physically strenuous because it did not require Ledbetter to lift or carry any heavy objects, but merely required him to attach various small parts to the pre-assembled main frame with impact wrenches or sockets. Relatedly, appellant argues that the level of exertion is related solely to how difficult a task is to perform and does not depend on whether it is performed in a warm or a cool environment. It maintains that although the heat may make the work environment, "less pleasant," heat is "simply a factor of the work environment and does not by any means in and of itself cause the 'exertion' or effort required to assemble a lawn tractor to become more strenuous."

Appellant further argues that the conditions that Ledbetter was working under the day of his heart attack were not unusual or

---

[1] Appellant asserts that there was not "one shred of evidence" that Ledbetter was attempting to assemble thirty tractors in one day. This assertion is contrary to the evidence in this case. Both appellee and her daughter testified that Ledbetter indicated to them that he had thirty tractors to assemble. Kidd also agreed that there were "probably" thirty tractors that required assembly and he testified that Sears preferred to have them all assembled in one day and that "whatever Sears pulled out there that day, they wanted it assembled." Appellant asserted that only ten or twelve of the tractors were placed outside for Ledbetter to work on that day; however, there was no evidence as to how many he had assembled at the point he suffered his heart attack.

extraordinary because he had worked under similar conditions for two consecutive summers. It notes that although Ledbetter preferred to work in the mornings, there were times when he was required to work outside during the afternoon heat. In addition, he had on occasion worked from 7:00 a.m. until 8:30 p.m. at night, but he had only been working for approximately eight hours when he had his heart attack.

■ Appellant's argument implies that Ledbetter cannot receive benefits under section 11-9-114 unless his *usual job duties* are physically strenuous. This is an absurd interpretation of the statute. Section 11-9-114 only requires that the exertion of the work must be extraordinary and unusual *in comparison* to the course of the employee's regular employment. *See, e.g., City of Blytheville v. McCormick*, 56 Ark. App. 149, 939 S.W.2d 855 (1997) (holding the extraordinary and unusual requirement was met where the claimant suffered a heart attack immediately after venting a fire and inhaling smoke, where he was normally assigned to drive a fire truck).

■ Moreover, this court is not required to abandon common sense in reaching a decision. It is untenable to argue that any type of work would not be more strenuous if performed in extreme heat, on black asphalt, without any ventilation. There is substantial evidence to support the Commission's finding that the circumstances in this case required extraordinary and unusual exertion. Although Ledbetter had worked outside in the afternoon heat on occasion, he did not, in the normal course of his employment, work outside, alone, without proper ventilation, when the heat index reached over 100 degrees. As demonstrated by his daughter's testimony, his usual course of employment did not cause him to perspire so much that his clothes were frosted with salt from his sweat. Morever, working outdoors in the heat had never caused Ledbetter to be hospitalized before this incident.

■ Viewing the facts in this case in the light most favorable to the Commission's findings, we hold that the Commission did not err in finding that appellee was entitled to dependency benefits. In reaching our decision, we note the unusual facts of this case and do not purport to hold that a claimant is required to demonstrate such extreme facts in order to recover under section 11-9-114.

Affirmed.

BIRD and BAKER, JJ., agree.