2009 Ark. App. 749

AYERS DRYWALL AND INSULA-TION, and AIG Claim Services, Inc., Appellants,

v.

Ronald CAREY, Appellee.

No. CA 09–524.

Court of Appeals of Arkansas.

Nov. 11, 2009.

Worley, Wood & Parrish, P.A., by: Melissa Wood, for Little Rock, appellants.

McKinnon Law Firm, by: Laura J. McKinnon, Fayetteville, for appellee.

ROBERT J. GLADWIN, Judge.

This appeal follows the April 27, 2009 decision of the Workers' Compensation Commission affirming and adopting the November 18, 2008 opinion of the Administrative Law Judge, finding that on July 17, 2006, appellee sustained a compensable injury in the form of a myocardial infarction, or heart attack. Appellants' sole argument on appeal is that the Commission's decision is not supported by substantial evidence. We affirm.

On July 17, 2006, an extremely hot day, appellee was performing his employment duties as a "stocker" for appellant/employer Ayers Drywall & Insulation. Those duties consisted primarily of picking up and carrying individual sheet-rock panels from stacks by the side of the delivery truck into the building and to the apartments where they were being installed. This was a two-man process, and the individual who was helping appellee that day was new to the job and was "not a very big guy." As a result, appellee was required to bear more of the load of the panels, particularly those that were required to be carried upstairs to second-floor apartments. Over the course of the day, appellee sweated profusely and drank large amounts of water. As the day progressed, he began to have trouble breathing and began to get weak. Appellee ultimately passed out and was revived when co-employees poured cold water on him.

At the time of the July 17, 2006 incident, appellee was fifty years old and had a history of hypertension and non-insulin-dependent diabetes. He was a smoker with a prior history of alcohol and methamphetamine use. He was mildly to moderately obese and had a family history of coronary-artery disease. Medical evidence reveals previous episodes of cardiac dysfunction that were supported by abnormal EKG findings. Tests performed after the

myocardial infarction revealed varied degrees of blockage in multiple coronary arteries. To some extent, this blockage was found to predate appellee's myocardial infarction. The medical evidence further establishes that appellee experienced both a heat stroke and a myocardial infarction on July 17, 2006.

Both Dr. Gaurav Kumar and Dr. Jane McKinnon expressed opinions that appellee's myocardial infarction was caused by a sudden rupture of a plaque formation with a resulting occlusion or blockage of the second-obtuse-marginal coronary artery. Although some of the other coronary blockage was addressed in the corrective bypass surgery on July 27, 2006, it was determined that the major cause for appellee's immediate need for medical treatment was $|_3$the plaque rupture and occlusion of the second-obtuse-marginal coronary artery with resulting myocardial infarction. The only expert medical evidence on the issue of causation is contained in a report from Dr. McKinnon dated April 9, 2007, which states in part:

Based upon some objective medical findings and within a reasonable degree of medical certainty, it is my opinion that Mr. Ronald Carey sustained a work related injury on or about the above date (July 17, 2006), which was the major cause of the patient's need for medical treatment and any resulting disability.

While Dr. McKinnon did not set out her reasoning for reaching this conclusion, appellants offered no expert medical opinion to contradict that of Dr. McKinnon.

Appellee's testimony at the June 23, 2008 hearing was corroborated by that of his supervisor, Mark Tiger. Mr. Tiger had been working on the same truck and stated that it was extremely hot that day, above average for the time of year. He testified that the temperature inside the apartments was even hotter. Mr. Tiger confirmed the description of the duties appellee was assigned to perform and indicated that it was not unusual for the crew to have to carry the sheetrock in by hand. He stated that between 3:00 and 5:00 p.m., another employee brought it to his attention that appellee was lying down. When he went to investigate, he found appellee on his back and thought that appellee had over-heated. Water was poured on appellee and then he was fanned by co-employees. Later, after the work for that day had been finished, Mr. Tiger and other employees transported appellee to the hospital.

On November 18, 2008, the ALJ issued his opinion in favor of appellee. Appellants filed a timely appeal with the Commission on December 15, 2008, and the Commission $|_4$affirmed and adopted the ALJ's opinion on April 27, 2009. Appellants filed a timely notice of appeal on May 4, 2009.

In appeals involving claims for workers' compensation, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *See Kimbell v. Ass'n of Rehab Indus. & Bus. Companion Prop. & Cas.*, 366 Ark. 297, 235 S.W.3d 499 (2006). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Id.* We will not reverse the Commission's decision unless we are convinced that fairminded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Dorris v. Townsends of Ark., Inc.*, 93 Ark.App. 208, 218 S.W.3d 351 (2005).

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Patterson v. Ark. Dep't of Health,* 343 Ark. 255, 33 S.W.3d 151 (2000). When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.* The Commission is not required to believe the testimony of appellee or any other witness, but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id.* Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony. *Arbaugh v. AG Processing, Inc.,* 360 Ark. 491, 202 S.W.3d 519 (2005).

The issue of compensability is controlled by the provisions of Arkansas Code Annotated section 11-9-114 (Supp.2009), and the standard of proof in heart attack cases is high, as follows:

(a) A cardiovascular, coronary, pulmonary, respiratory, or cerebrovascular accident or myocardial infarction causing injury, illness, or death is a compensable injury only if, in relation to other factors contributing to the physical harm, an accident is the major cause of the physical harm.

(b)(1) An injury or disease included in subsection (a) of this section shall not be deemed to be a compensable injury unless it is shown that the exertion of the work necessary to precipitate the disability or death was extraordinary and unusual in comparison to the employee's usual work in the course of the employee's regular employment or, alternately, that some unusual and unpredicted incident occurred which is found to have been the major cause of the physical harm.

(2) Stress, physical or mental, shall not be considered in determining whether the employee or claimant has met his or her burden of proof.

Subsection (a) requires that the relation to all factors contributing to the ultimate physical harm and "accident" must be the major cause of the physical harm. Subsection (b) focuses on the circumstances surrounding the incident and requires that the exertion of the work necessary to precipitate the disability or death must be extraordinary and unusual in comparison to the employee's usual work in the course of the employee's regular employment or, alternatively, that some unusual and unpredicted incident occurred that was the major cause of the physical harm.

Appellants' primary argument is that the requirements of subsection (b) were not met because there was absolutely nothing extraordinary or unusual about appellee's job duties or his working conditions on July 17, 2006. They recite testimony in which appellee acknowledged that the work was always hard, it was always hot, and they never stocked the heavy sheetrock in an air-conditioned environment.

Appellants additionally focus on appellee's preexisting propensity for a myocardial infarction and risk factors for heart problems in general, including smoking a pack of cigarettes each day; diabetes that requires medication; prior drug and alcohol use/abuse; weight of approximately 230 pounds; personal and family history of high blood pressure; family history of cardiovascular disease. Appellants note that appellee's cardiovascular surgeon, Dr. McKinnon, is the twin sister of appellee's attorney. They contend that Dr. McKinnon failed to indicate the objective findings that were the basis of her opinion, and further did not identify appellee's actual injury. Appellants maintain that Dr.

McKinnon was not provided information regarding appellee's drug and alcohol abuse, medication noncompliance, or prior cardiac dysfunction. As such, they assert that her opinion was not based upon a complete and accurate history.

Appellants set out multiple discrepancies between appellee's testimony versus information from his medical records. Appellee denied prior heart-related conditions or symptoms; however, medical records show that he sought medical treatment multiple times between 2002 and 2004 for various complaints that could be deemed related to a heart-related condition. Appellants submit that it is evident that appellee's heart condition was so far compromised by his preexisting problems, coupled with many years of alcohol and drug abuse, that he was likely to experience a myocardial infarction at any time. They maintain, without specific supporting medical information, that even the slightest exertion could have induced a heart attack. That said, appellee chose a job in which he worked in hot, physically demanding conditions each day, lifting heavy sheets of drywall under extreme temperatures. Appellants maintain that he was not asymptomatic prior to his heart attack on July 17, 2006, and note that he has suffered two additional heart attacks since that one.

From our review, we conclude that the medical evidence supports the causal connection in this case. Drs. Kumar and McKinnon both agreed that appellee's myocardial infarction was caused by a sudden rupture of a plaque formation with a resulting occlusion or blockage of the second-obtuse-marginal coronary artery and myocardial infarction. Dr. McKinnon opined that the work-related injury caused appellee's need for surgery in an April 9, 2007 response to an inquiry from counsel, and appellants did not present any medical evidence contrary to Dr. McKinnon's opinion.

Arkansas Code Annotated section 11–9–114(a) states that a heart attack is compensable if, in relation to other factors contributing to the physical harm, an accident is the major cause of the physical harm. Here, the medical evidence indicates that appellee's exertion in the extreme environmental conditions present on the day of the incident was the major cause of his myocardial infarction. Despite any preexisting propensities for myocardial infarction, appellee had previously performed construction-labor related jobs without restrictions related thereto and was able to report to work each day and perform his duties.

With respect to those preexisting conditions, appellants argue that appellee's condition was so far compromised that even the slightest exertion could induce fatal results, and that he was likely to experience a heart attack at any time. The problem is that appellants are improperly asserting that, because there was medical evidence that might have supported a contrary conclusion, the Commission improperly weighed the medical evidence. The mere fact that there was evidence supporting a contrary finding does not allow this court to reverse the Commission's resolution of conflicting medical evidence. *See, e.g., Kempner's v. Hall,* 7 Ark.App. 181, 646 S.W.2d 31 (1983) (affirming the Commission's finding that the claimant's myocardial infarction was the result of his work and was not the result of a preexisting coronary-artery disease, even though there was evidence to the contrary). A person who has predisposing factors may yet suffer a heart attack that is caused by something other than those predisposing factors, and the existence of predisposing factors is merely causal evidence for the Commission to assess.

We next review the second statutory requirement, the activities at work that precipitated the heart attack. Compensability can be met by either of two findings: (1) extraordinary and unusual exertion, or (2) an unusual and unpredicted incident. The ALJ noted that the term "extraordinary and unusual" does not require the causal activities to be entirely different from any type of employment activities that the claimant may have previously performed. *See Huffy Serv. First v. Ledbetter*, 76 Ark.App. 533, 69 S.W.3d 449 (2002). In this case, appellee notes that he had been employed by appellant/employer for approximately six months. Although he had previously carried panels of drywall/sheetrock during the performance of his job duties, possibly even up stairs, he had not been required to perform those duties in as hot an environment as that present on July 17, 2006. Additionally, he bore more than the normal share of the load that day because of his work-partner's size and inexperience.

Despite appellants' argument to the contrary, the ALJ analyzed each of the witnesses' testimony regarding the details of the activities and environment on the day in question. We hold that the ALJ, and the Commission through its affirming and adopting that opinion, did explain why the events were extraordinary and unusual—the extraordinarily hot temperature, no breeze to lessen the heat, and appellee's extra burden of bearing most of the load because he was partnered with a smaller man. Additionally, a specific finding was made that appellee's compensable heat stroke was an unusual and unpredicted incident that logically contributed to the subsequent cardiac complications.

Substantial evidence exists to support the Commission's finding of compensability related to the myocardial infarction. The determination of whether the events were unusual and extraordinary was a factual one for the Commission to make, and reasonable minds could determine that the myocardial infarction was the primary cause of appellee's need for medical treatment, including the open-heart surgery and resulting recovery and rehabilitation.

Affirmed.

VAUGHT, C.J., and MARSHALL, J., agree.